Fuld, J.
Whether the plaintiffs were wrongfully expelled from the union of which they were members and, if so, whether they may recover damages for such expulsion from the union, an unincorporated association, are questions presented by this appeal..
The plaintiffs are licensed deck officers and, until 1953, all of them, except Dipietrantonio, were members of Local 88 of Masters, Mates and Pilots of America, Inc., a national union operating in all major ports of the United States and Canada. Plaintiff Dipietrantonio is a member of Local 14 in Baltimore, but frequently shipped out of New York through Local 88. In 1953, he was deprived of this privilege, and the other plaintiffs were expelled from Local 88. In the present action brought against the national union, its affiliated local and the latter’s two principal officers, the plaintiffs seek both the restoration of their union privileges and money damages for wages lost. [jThe controversy, from which this action stemmed, followed a bitterly contested election in 1952. Plaintiffs Madden, Liddy and Polachek ran for union office on a slate opposing the individual defendants, who were candidates for re-election, and plaintiff Sohnen was a member of the committee designated to supervise the election. When defendant Atkins and other officers frustrated attempts on the part of the election committee to have the local membership approve certain procedural safeguards, Sohnen and the committee’s chairman, comprising a majority of that body, brought suit to prevent the election from being held. On the day set for the election, the court had not yet acted and the regularly elected ballot committee refused to proceed with the election. Thereupon, the executive committee, consisting of the incumbent officers, “appointed” a new committee which, in the absence of the opposition candidates, counted the ballots and declared the incumbents re-elected by large majorities.
Thereafter, in February of 1953, a number of defeated candidates, assertedly “ still desirous of taking an active and effective part in [union] affairs,” along with others, formed the “American Mariners Association of the National Organization of Masters, Mates & Pilots of America ’ ’ (hereinafter referred to as AMA), to work, as their initial leaflet put it, “ within the Union * * * for better trade unionism in *289 Local 88.” That leaflet, signed by Liddy and Madden “ For the Founding Committee,” read, in pertinent part, as follows:
“ In America we have a two party system — Republican and Democrat — and our country prospers and freedom is protected. Is not such a system desirable and possible in Local 88 ?
“We believe that two parties within the Union, working for and in the interest of the Union and the membership, will be a good and healthy thing for our Local. There will be a free exchange of ideas, and all persons will be free to express themselves and attempt, within the framework of the Union, to guide the welfare of the Union in a beneficial way. /
‘ ‘ For this purpose we have formed a group called the American Mariners Association of the National Organization of Masters, Mates and Pilots of America. * * *
“ Such an Association cannot and will not be permitted to be a dual Union. It must never speak in the name of the Union, seek to handle grievances or Union jobs, deal with the Employer, or propose or seek to cause the membership to ever disaffiliate from Local 88.
“ But within the Union it can be a force for good — for better trade unionism in Local 88. ’ ’
On February 25, 1953, some two weeks after the appearance of this paper, Atkins preferred charges against Liddy and Madden, accusing them of advocating and creating a “ dual union,” that is, AMA; of advertising said dual union in the “ Labor Leader,” a publication of the Association of Catholic Trade Unionists; of attending, and inviting other members of the local to attend, “unauthorized meetings”; permitting nonunion members to be present at such meetings ; and of distributing ‘1 smear sheets ’ ’ during the 1952 election campaign. At later meetings, in March and May, 1953, charges were preferred against Polachek, Sohnen and Friedman, accusing them of violating their obligations by joining the dual union and in distributing its literature. Polachek was further accused of swearing falsely in an affidavit in the action brought against the union, of sending out a statement advocating a dues strike and mass withdrawal from the union and of urging union members to join AMA. Sohnen was also *290 charged with unjustly commencing the pre-election lawsuit; with co-operating with the opposition slate; with falsely accusing the local’s officials of fraud; and with attempting “ to create dissension ” by declaring that such officials were losing job opportunities for the members.
At each meeting at which charges were preferred, the union members present elected a trial committee and in each instance the committee found the plaintiffs so charged guilty and voted that they be expelled from the union. The preferring of charges, the election of the trial committees by the membership and the subsequent proceedings were all in accordance with the constitutional provisions of the local. The reports of the trial committees were in each case rendered to a “ regular meeting” of the local’s membership and, again in line with constitutional provision, the membership in each instance affirmatively approved and adopted the trial committees’ determination. .
As noted above, plaintiff Dipietrantonio^ was not a membqr of Local 88 and the action taken against him was somewhat different. In March of 1953, Atkins charged Dipietrantonio' with stating that he “didn’t like” him (Atkins) and with “telling lies ” about the local, took up his shipping card and announced that he could not in the future work in New Yo'rk. "When Dipietrantonio aáked for a trial, Atkins’ response was, “ I am the president of this local, I am National president, and I do what I like.”
Following the action taken by the membership, the plaintiffs (except for Dipietrantonio) separately appealed to the Local Executive Board consisting of Atkins — who disqualified himself— and six other officers of the local. In June of 1953, that body, relying exclusively on the charge of dual unionism, upheld the conviction and expulsion of Madden, Liddy and Friedman, who then appealed to the National Executive Committee of the union. The national organization never acted on their appeals, despite requests for an early hearing and an opportunity to work pending determination of the appeal. And the Local Executive Board did not act on the appeals of Sohnen and Polachek, also taken in June, until November 9, 1953, more than a month after the plaintiffs commenced this suit seeking reinstatement.
*291 Without union affiliation, or in Dipietrantonio’s case a shipping card, the plaintiffs were unable to obtain employment as officers in the merchant marine and, from the time of their expulsion in 1953, worked as seamen or in odd jobs unrelated to their supervisory status or shipboard training.)
After a lengthy trial, the court at Special Term, noting, first, that the plaintiffs had not exhausted the remedies provided by the union’s constitution and by-laws and, second, that “ some evidence ” had been presented to support the determination made by the trial committees, dismissed the complaint. The Appellate Division modified the resulting judgment; concluding that the plaintiffs had been wrongfully expelled, it directed their reinstatement, but held them not entitled to damages. From that determination, both sides appealed, the defendants from so much of the judgment as directed reinstatement, the plaintiffs from that portion which denied damages to them.
We may dispose of the defendants’ initial contention, that the plaintiffs failed to exhaust their remedies within the framework of the union, without extended discussion. It is, of course, true that, where timely and adequate relief is provided, an aggrieved member must first exhaust that organization’s remedies before seeking redress from a court. (See Havens v. Dodge, 250 N. Y. 617; Rubens v. Weber, 237 App. Div. 15, 18-19.) But, it is equally true, ‘ ‘ the law does not require a man who has been left without means of subsistence through the wrongful action of the union to make continued futile efforts beyond a reasonable time within which to obtain relief.” (Browne v. Hibbets, 290 N. Y. 459, 466; see, also, Polin v. Kaplan, 257 N. Y. 277, 282; People ex rel. Deverell v. Musical Mut. Protective Union, 118 N. Y. 101, 108.) In other words, as this court explicitly held in Browne v. Hibbets (290 N. Y. 459, 466, supra), “ The obligation imposed upon a union member is no more than to use all reasonable means to make use of the remedies available to him within the union organization before resorting to the courts ” and the failure of a union tribunal “ to consider within a reasonable time the appeal * * * permits an application to the courts by a member who has been expelled.”
Here, the Local Executive Board, despite pleas of hardship, did not act on the appeals of Sohnen and Polachek until after suit had been instituted, some six months following their *292 expulsion, and the National Executive Committee, despite requests to it for an early hearing, did absolutely nothing for some four months.
Turning to the substance of the charges against the plaintiffs, we need not, so far as Madden, Liddy and Friedman are concerned, consider any accusation other than that of ‘ ‘ dual unionism,” that being the sole ground relied upon by the Local Executive Board. There is not the slightest support for such an accusation. What the evidence actually demonstrates, and overwhelmingly, is that the plaintiffs sought to work ‘ ‘ within the union” for its improvement and for the advancement of the interests of the members. In all of this very extensive record, there simply is nothing to establish or even to suggest that the plaintiffs intended to injure or to destroy their local or that they attempted to form a disloyal or competing group. On the contrary, the record everywhere supports the statement made by the AMA Founding Committee that it sought “ two parties within the Union, working for and in the interest of the Union and the membership ” as “a good and healthy thing for our Local” and that it sought “ a free exchange of ideas * * * within the framework of the Union, to guide the welfare of the Union in a beneficial way. ’ ’ Indeed, the leaflet which first announced its formation stated that AMA ‘ ‘ cannot and will not be permitted to be a dual Union ’ ’, that ‘ ‘ It must never speak in the name of the Union, seek to handle grievances or Union jobs, deal with the Employer, or propose or seek to cause the membership to ever disaffiliate from Local 88 ’ ’ and later AMA publications never veered from that position.
We recognize, of course, that, despite protestations by the founders of the AMA that they would not permit it to operate as a dual union, its actual conduct might be shown as contradicting its stated objectives. There is, however, nothing in the record to indicate that the AMA in practice ever departed from its asserted principles. And. in point of fact, defendant Atkins conceded as much at the trial, when he testified that AMA did not seek to be a local union, that the members had a right to meet for political purposes, to discuss union affairs, to publish leaflets and a neAvspaper, to unite for political objectives within the union, to give themselves a name, to consult with attorneys and to have technical assistance. In view of this concession, *293 which but reflects the evidence, the charge of dual unionism must fall and these plaintiffs are, as the Appellate Division concluded, entitled to reinstatement.
The additional charges against Polachek and Sohnen do not warrant a different result. As to distributing the so-called “ smear sheets,” it is enough merely to say that such sheets are nothing more than ardent and hard-hitting campaign literature by the “ outs,” matched, indeed, in substance and content, by articles published and distributed by the incumbents. As to the only other charge worthy of mention — that against Polachek for allegedly sending out a statement in which ‘ ‘ he advocated mass withdrawal from Local 88, dues strike, and dual unionism” — there is nothing to support it. Polachek denied so doing and, in fact, the statement itself refutes the charge; it is an unsigned typewritten slip of paper, distributed to officials of the national union, requesting that “the National Executive Committee * * * intercede * * * to see that * * * honesty and integrity within our organization [are] upheld ” and reciting that “ Many members at present are advocating mass with-drawal from the local, dues strike, dual unionism and boycott of our patrolmen unless the situation within our local is remedied.” There is little evidence to connect Polachek with this paper, but, even assuming that he did author it or send it out, that is a far cry from disloyalty to the union.
If there be any public policy touching the government of labor unions, and there can be no doubt that there is, it is that traditionally democratic means of improving their union may be freely availed of by members without fear of harm or penalty. And this necessarily includes the right to criticize current . union leadership and, within the union, to oppose such leadership and its policies. (See Polin v. Kaplan, 257 N. Y. 277, 284, supra.) The price of free expression and of political opposition within a union cannot be the risk of expulsion or other disciplinary action. In the final analysis, a labor union profits, as does any democratic body, more by permitting free expression and free political opposition than it may ever lose from any disunity that it may thus evidence.
That being so, the plaintiffs herein have been punished for activity that in no way may be considered inimical to the union *294 of which they were members.' It follows that their expulsion was illegal and that the Appellate Division correctly ordered their reinstatement. On similar reasoning, plaintiff Dipietrantonio, whose shipping card was taken by defendant Atkins solely because he expressed a dislike for that official and (according to Atkins) lied about the union, was properly held entitled to an order restoring his right to that card and to the use of the union’s employment facilities..,. Z
We are thus brought to the plaintiffs’ appeal from the decision denying pecuniary damages.
It is clear that the plaintiffs suffered financial loss and severe hardship through the termination of their union privileges. The National Union had agreements with all but about 10% of United States flag owners and operators in which it was provided that the hiring of licensed personnel, except for masters and chief officers, was to be accomplished solely through the various locals. In consequence, Local 88 has had almost complete control over the employment of deck officers in the Port of Hew York. When, therefore, the union took from the plaintiffs their union privileges, it made it virtually impossible for them to obtain the type of employment to which they were accustomed and for which they had been trained.
To hold that injuries as real as these are without remedy against the union is a conclusion not to be reached lightly. Moreover, such a result would in practice go far to undermine our ruling that union members may not be expelled for the exercise of their right to democratic action. The restoration of union membership after wrongful expulsion is at best obtainable only after painful and long and costly proceedings. This cannot help but deter criticism of the leadership by the general membership, and, if to such deterrent there is added the loss of earnings in the interval before reinstatement, few indeed will have the fortitude or the wherewithal to challenge and criticize those in control.
The Appellate Division was of the view, however, that the precedents forbade an action against the union for damages, unless the proof established an authorization or ratification of the expulsion by all of the members and thereby rendered each and every one of them responsible for the wrong committed. While we have held that to be the law where damages *295 are sought against an unincorporated union on account of a libel (see Martin v. Curran, 303 N. Y. 276), the rule is otherwise in cases of wrongful expulsion.
Upon analysis, the decisions sustain the right of one wrongfully expelled to recover damages from the union, for what amounts to a breach of contract (see, e.g., Polin v. Kaplan, 257 N. Y. 277, 281-282, supra), even though only á portion of its membership may have favored, or voted for, the action taken. In some cases, it is true, on the evidence adduced, it has been held that there was no liability (see Glauber v. Patof, 294 N. Y. 583, 584; Browne v. Hibbets, 290 N. Y. 459, 467, supra; Havens v. King, 221 App. Div. 475, 481-482, affd. sub nom. Havens v. Dodge, 250 N. Y. 617, supra), but in others this court has unequivocally decided that, if damages are proved, the union is liable notwithstanding the fact that all of its members had not actually participated in or approve'd the expulsion. (See, e.g., Blek v. Wilson, 262 N. Y. 253, 255, remittitur amended and a new trial ordered on the question of damages 262 N. Y. 694; Polin v. Kaplan, 257 N. Y. 277, 286, supra, motion for reargument denied 257 N. Y. 579; Shapiro v. Gehlman, 244 App. Div. 238, 243, mod. on other grounds sub nom. Shapiro v. Brennan, 269 N. Y. 517; see, also, Real v. Curran, 285 App. Div. 552, 553; Brooks v. Engar, 259 App. Div. 333, 334, appeal dismissed 284 N. Y. 767.) Polin v. Kaplan (257 N. Y. 277, supra) is illustrative of the cases in which the union has been held responsible for damages. An officer of the local had presented charges against the plaintiffs at a regular meeting of the membership; the union’s executive board reported its findings and judgment to a regular meeting of the membership ; and the members at that meeting voted to approve and confirm the board’s determination that the plaintiffs be expelled. On such facts, and those in the case before us are indistinguishable, this court decided that the plaintiffs were entitled to recover for wages lost as a result of the union’s action in wrongfully expelling them and, indeed, the court denied a reargument sought solely on the ground that damages could not be awarded against the union (257 N. Y. 579). And, in Blek v. Wilson (262 N. Y. 253, 255; 262 N. Y. 694, supra), where the plaintiff was unjustly suspended by vote, not of the membership, but of the executive board, *296 we similarly held that the union was responsible for damages, if any, suffered by the plaintiff.
In short, the principle to be educed from the decisions involving wrongful expulsion is this: Where it is brought about by action on the part of the membership, at a meeting or otherwise, in accordance with the union constitution, the act of expulsion will be regarded as the act of the union for which damages may be recovered from union funds. Where, however, proof of such union action is lacking, the claim for damages against the organization must fail.
Martin v. Curran (303 N. Y. 276, supra), upon which the defendants principally rely, is quite different from the present case. That was an action seeking damages from the union for an alleged libel published in a union publication. The complaint was dismissed for failure to allege that the libel had been authorized by the union membership. There was no occasion to consider the nature of the proof that would warrant a finding that the libel was an act of the union rather than that of the individuals who composed it. For the wrongs complained of in the case before us, the requisite participation of the membership was sufficiently shown to justify liability against the organization, even though not against the individual members.
It is certainly not too much to expect that a labor union, of all organizations, should not deprive its members of their jobs or of job opportunities without proof, fairly raised and fairly heard, of substantial wrongdoing. Nor, as the cases earlier , cited recognize (e.g., Polin v. Kaplan, 257 N. Y. 277, supra; Blek v. Wilson, 262 N. Y. 253, supra), is it too much to require the union to assume responsibility for the wrongful expulsion of a member by a number less than all where the membership has expressly provided for such a delegation of disciplinary power. By sanctioning the delegation of authority, the membership subjects the funds of the union to liability for the abuse of such power by those entrusted with it.[1]
As is manifest and as already remarked, a contrary result would have far-reaching consequences. ' If one wrongfully expelled has no redress for damage suffered, little more is needed to stifle all. criticism within the union. Few *297 are martyrs enough to suffer the anguish, the risk and the expense of the suit itself; fewer, if any, to suffer, in addition, the loss of wages for the usually lengthy period before reinstatement and restoration of union employment. Moreover, the financial burden imposed on the union need not be heavy. Under familiar principles, a plaintiff is required to minimize his damage by accepting reasonable offers of employment and no reason suggests itself why the union may not further decrease its risk by permitting the expelled member to work pending the proceedings brought to challenge the validity of the expulsion.
From what we have said, it follows that the plaintiffs Madden, Liddy, Polachek, Sohnen and Friedman, unjustly, expelled by 'action of the union membership, may recover from Local 88 whatever damages they may have sustained. The plaintiff Dipietrantonio, however, is not entitled to damages from the local; wronged, not by any act of the membership, but by Atkins personally, he may recover from the latter any pecuniary loss suffered. Finally, as to the liability of the national union, it is sufficient to observe that the record discloses no wrongdoing on its part to any plaintiff.
The judgment of the Appellate Division should be modified insofar as it failed to grant damages to the plaintiffs, in accordance with the views expressed in this opinion, and the matter remitted to Special Term for the assessment of such damages and, as so modified, affirmed, with costs to the plaintiffs.

. Whether, and under what circumstances, individual officers or members of the union may also be held liable, is a question not presented by the record.