**Arthur VARS, Sr., Plaintiff-Appellee,**

v.

**INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIPBUILD-ERS, BLACKSMITHS, FORGERS & HELPERS, Defendant-Appellant.**

No. 404, Docket 28179.

United States Court of Appeals Second Circuit.

Argued June 10, 1963.

Decided June 27, 1963.

Ernest Fleischman, Delson & Gordon, New York City, Lewis F. Grayson, General Counsel, Kansas City, Kan. (Ralph P. Katz, New York City, of counsel), for defendant-appellant.

Smeraldi & Shafner, New London, Conn. (Burton H. Hall, New York City, of counsel), for plaintiff-appellee.

Before MOORE, HAYS and MARSHALL, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

This is an appeal by the International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers (hereinafter referred to as the "Union" or "International") from a judgment declaring null and void the action of the Union in expelling the plaintiff, Arthur Vars, Sr., from membership in the Union and enjoining the Union from interfering with or otherwise restricting the plaintiff in the exercise of his rights as a member of the Union.

The plaintiff was a member in good standing of the defendant Union from 1951 until his expulsion in October, 1961, at which time he was serving as president of the Union's Local Lodge 614. The Local was placed under a trusteeship by the International in 1961 and shortly thereafter charges were filed against Vars alleging that (1) he had circulated false and erroneous information detrimental to the Union's welfare; (2) he willfully had submitted false and fraudulent pay and expense claims to Local 614; and (3) he had maintained and displayed religious articles in the Local's office contrary to provisions of the International Constitution. Vars was given notice of the charges, was present and participated in a hearing convened pursuant to the International Constitution, was ultimately found guilty of all charges and was expelled from membership in both the Local and the International.

Vars then filed an action in the district court under the Labor-Management Reporting and Disclosure Act, 29 U.S. C.A. §§ 411, 412, 413, 461, 462, 464 and 466. His complaint embodied three claims. The first sought an injunction in effect restoring him to membership in the Union and damages incurred in the protection of his rights; the second requested the removal of the trusteeship alleged to have been wrongfully and illegally imposed; and the third prayed for his reinstatement as president of the Local. At the time of trial, the second claim had become moot because of the removal of the trusteeship and the third claim was dismissed for lack of jurisdiction, Vars v. International Brotherhood of Boilermakers, etc., 204 F.Supp. 245, 248 (D.C.Conn.1962). Neither of these claims is involved on this appeal.

A trial was held before the district court on the remaining claim of wrongful expulsion from the Union at which the district judge permitted Vars to introduce evidence not submitted by him to the Union tribunal. The Court held that the evidence failed to sustain any of the three charges made against Vars and accordingly granted a judgment in Vars' favor. Vars v. International Brotherhood of Boilermakers, etc., 215 F.Supp. 943 (D. Conn.1963). The Union, acquiescing in the district court's findings with respect to the charges of circulation of detrimental material and displaying of religious articles, here appeals only from the Court's determination that the evidence did not support a finding that Vars had submitted false and fraudulent pay and expense claims to the Local.[1]

Section 101(a) (5) of the Labor-Management Reporting and Disclosure Act (29 U.S.C.A. § 411(a) (5)) provides that:

"No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

---

1. Vars argued on this appeal that since the Union abandoned two of the three charges that were the grounds for his expulsion, new proceedings before the Union would be necessary in order to determine whether it considered the second charge sufficient grounds in itself for expulsion, citing Polin v. Kaplin, 257 N.Y. 277, 177 N.E. 833 (1931). In view of our disposition of this appeal, we need not consider this contention.

Any person whose rights under this section have been infringed may bring an action in the district court to secure redress for any violation, 29 U.S.C.A. § 412. At trial and on this appeal, Vars contended that all three subdivisions of Section 101(a) (5) had been violated. The district court held that he had been served with written charges that were sufficiently specific, that he had received timely notice under the Union rules, and that he was given sufficient time in which to prepare his defense. However, the Court determined that there was such a dearth of probative evidence in support of the claim that Vars had submitted false and fraudulent pay claims that it could not be said that he was "afforded a full and fair hearing."

■■ Both parties agree that in an action of this kind, judicial review of the findings of the Union tribunal is limited in nature. The courts are not free to substitute their judgment for that of the trial court or to re-examine the evidence to determine whether it would have arrived at the same conclusion that was reached by the trial body. Rosen v. District Council No. 9 of New York City, 198 F.Supp. 46 (S.D.N.Y.1961); Phillips v. Teamsters, Chauffeurs, etc., Local Union No. 560, 209 F.Supp. 768 (D.N.J.1962). However, implicit in the requirement of a full and fair hearing is the requirement that there be some evidence to support the charges made. Cf. Madden v. Atkins, 4 N.Y.2d 283, 174 N.Y.S.2d 633, 161 N.E. 2d 73, 74 A.L.R.2d 772 (1958). If Section 101(5) is to provide any measure of protection for the individual union member who finds himself beseiged by the full power of the International Union, some review is necessary in order to protect such members from obvious abuses. This is especially true in cases such as this where the hearing examiner is not an

independent figure divorced from union controversies but is an officer of the International Union. Thus, although the courts may be without power to review matters of credibility or of strict weight of the evidence, a close reading of the record is justified to insure that the findings are not without any foundation in the evidence.

■ The Union contends that the district court committed error in not limiting the trial to the record and the evidence submitted before the Union tribunal. Since on our view of the evidence introduced at the Union hearing, there was insufficient evidence to support a finding that Vars submitted false and fraudulent pay and expense claims, there is no need to rule on this question.

The evidence relied upon by the Union in support of the charges against Vars falls into two categories. The first was that Vars asked for and received payment for time allegedly spent on Union business in excess of time lost from his regular job. The By-Laws of the Local, ratified by the membership of the Local on January 6, 1961, and approved by the International President on March 14, 1961, provided that the Local president was entitled to a salary of $125 per month plus "reimbursed lost time."[2] The Union claimed that Vars submitted vouchers for eleven hours of time spent on union business in excess of time lost on his job. However, a joint exhibit prepared by both parties for the district court summarizing records which were before the hearing examiner demonstrates that during the same period of time, Vars was absent from work for forty-nine and one-quarter hours on union business for which he made no claim and received no remuneration. As the district court stated, "Is this the conduct of a man who is scheming to file fraudu-

2. The district court ruled that since the charges specifically referred to violations of the Local by-laws which did not become effective until March 14, 1961, no claims with respect to payments made to Vars prior to that time could be considered under that charge. Any claims orig-

inating prior to March 14, 1961, would be enforceable, if at all, only in accordance with the International Constitution of May 15, 1957, and the applicable articles of that Constitution were not set forth in the charge.

lent and false pay and expense claims?" 215 F.Supp. at 951.

The Union, however, argues that there is uncontroverted evidence that Vars received extensive payments for time not lost from work during 1960 and January through March 1961. These claims were submitted before the enactment of the by-laws made clear that union officials were not entitled to reimbursement for time spent on union business unless they were also losing time on the job. Although there was some testimony at the Union hearing to the effect that prior to the enactment of the by-laws, it was the custom and practice not to reimburse for such time, Vars stated that his understanding was that he was entitled to be reimbursed. Under these circumstances, and in the light of the apparent uncertainty that was not clarified until the by-laws were adopted, the propriety of Vars' conduct before March 14, 1961 is not at all probative of his intent thereafter.

The second category involved a voucher filed by Vars for advance expenses for a trip to a school for workers at the University of Wisconsin in August of 1961. The Local by-laws provide that:

> "2. Expenses when out of town on authorized business for the Subordinate Lodge officers, representatives or employees (such as Delegates or Assistant Business Managers) shall receive for expenses, actual railroad fare and pullman fare (when necessary) or nine cents (9¢) per mile for car mileage; hotel and meal expenses not to exceed $30.00 per day and other incidental expenses when itemized in an expense account."

The voucher was in the amount of $505.26, $175.26 for the roundtrip train ticket and $330.00 for 11 days at $30.00 per diem. The Union submitted evidence that Vars had submitted a voucher for only $401.70 for a similar trip the year before. On this ground alone, the Union argues that the unaccounted for difference of $103.56 supports the charge that the 1961 voucher was false and fraudulent. It is most significant that the Union's hearing officer (sustained by the Union's Executive Council) despite the charge that Vars' submission of his claims was done "willfully and fraudulently" in his "Findings and Conclusions" did not hold that Vars' actions were either willful or fraudulent. On this phase of the case he found only that Vars "did have some questionable expense claims" and that he exceeded his authority. It seems clear that this one-hundred dollar difference falls far short of demonstrating fraudulent intent. The costs may well have been higher in 1961 and there is no proof indicating that the sums received were not actually spent by Vars.

In summary, the evidence before the Union hearing examiner provided no basis for the conclusion that Vars fraudulently submitted false pay and expense claims to the Local and the District Court properly declared his expulsion null and void.

Affirmed.

HAYS, Circuit Judge (concurring in the result).

I concur in the result.

The statute (Section 101(a) (5) of the Labor-Management Reporting and Disclosure Act) requires as a condition of the validity of a union's disciplinary action against one of its members that the member to be disciplined be "served with written specific charges". Obviously this means that the subsequent discipline must be based upon the charges served. In the present case there was no evidence whatsoever to support the charge which was served, that of filing false and fraudulent pay and expense claims. Affirmance of the decision of the district court follows from this conclusion. There is therefore no occasion to evaluate or weigh the evidence produced at the union hearing.