Theodore A. Kelly, J.
This is a proceeding by petitioner, a member of the Letchworth Village Chapter No. 412 of the Civil Service Employees Association (designated herein as Letchworth Village Developmental Center, Chapter No. 412, *729 Civil Service Employees Association, and hereinafter referred to as the Association), for judgment declaring him to be the duly elected president of the Association, directing his installation, and enjoining respondents from holding another election for the office of president.
The election of officers of the Association was held on May 28, 1975. Petitioner was a candidate for president, along with respondents Ramirez, Babcock and one Peter Pavich. Petitioner received 202 votes, which was the greatest number of votes received by any candidate.
Thereafter, objections to the election procedures were filed by Ramirez and Babcock. To understand the procedure applicable to the filing of such objections, reference should be made to the Constitution and By-laws of the Association, and to the election procedure defined therein.
The Association is a chapter which was organized as a subdivision of the Civil Service Employees Association, Inc. (hereinafter the CSEA; see const, art II). When officers of the Association are to be elected, section 4 of article IV of the constitution provides that "all members in good standing of the chapter shall have an opportunity to vote by written ballot or mechanical voting machine.” Section 4 further requires the balloting to "be conducted in the manner prescribed in this Constitution” and in such a manner as will guarantee the right to each member in good standing to vote.
The procedure relative to chapter elections is set forth in article IX of the constitution. Section 5 of article IX provides, in part, as follows: "The Election Committee’s primary duty is to insure that the election is properly conducted and to see that the ballots are distributed to all members in good standing at least fourteen (14) days before the return date of the ballots if mail ballot is used (emphasis supplied). * * * The distribution of the ballots and the return of the completed ballots shall be accomplished in such a manner as to guarantee each member in good standing an opportunity to cast his ballot without the necessity of his physical presence at the polling place”.
Results of the election are to be made by the Election Committee within 48 hours of the closing of the polling places or, in the event that mail ballots are used, within 48 hours of the date set forth for the return of the ballots (art IX, § 7). Only current dues-paying CSEA members are eligible to vote (art IX, § 6).
*730 Section 8 of article IX provides as follows: "If a mail balloting is not conducted, the Election Committee shall declare where the balloting is to take place and the date on which the members may cast their ballots. Balloting is to take place between 6:00 a.m. and 6:00 p.m. The Election Committee shall provide for notification of the aforesaid at least five (5) days before the date set for the election. Upon showing just cause, a member who is unable to cast his ballot personally may be permitted to cast his ballot by mail.”
The procedure for filing protests of the election is set forth in section 9 of article IX, which provides, in part, as follows: "Protests of the election must be submitted with written allegations to the CSEA Headquarters, 33 Elk Street, Albany, New York, to the Executive Director by certified mail, return receipt requested, within five (5) days after the election results are announced, with notice of such protest sent to all current chapter officers, candidates and the Election Committee.”
Ramirez and Babcock duly and timely filed notice of protest with the Executive Director of CSEA. The Ramirez protest was filed on May 30, 1975 and the Babcock protest on June 1, 1975. The protests were then referred by the Executive Director of CSEA to one Bernard C. Schmahl (hereinafter Schmahl), the Chairman of the Special Election Procedures Committee of CSEA (hereinafter the Special Committee). The Special Committee is empowered to investigate chapter elections to determine whether or not there has been any violation of the constitution. In the course of its investigation the Special Committee often seeks the assistance of CSEA Field Staff members.
In his opposing affidavit herein Schmahl states that the Ramirez and Babcock protests were based upon their allegations that: (1) many employees were not allowed time off to vote by their supervisors; (2) there was no provision made for absentee balloting by mail for those members who could not be present to vote; and (3) that voters who could not produce their Association membership cards were not allowed to vote.
On June 12, 1975 Schmahl wrote to respondent Clark, the incumbent president of the Association, advising that a new election should be held in view of the protests filed. After receiving a communication from petitioner and petitioner’s attorney, Schmahl then requested one Thomas J. Luposello, a Regional Field Supervisor for CSEA, (hereinafter Luposello) to make an investigation of the subject election and to file a *731 report, after which Schmahl was to review his initial determination of June 12.
In his report Luposello observed that the Association has approximately 2300 eligible voters and that only 619 had voted at the election. He noted that the election was held on May 28, 1975 between the hours of 6:00 a.m. and 6:00 p.m.; that election ballots were given to persons who were on an eligible list provided by the CSEA, after union membership of the prospective voter had been verified by presentation of a union card; that he had met with the Executive Committee and the Election Committee of the Association; that the Election Committee "stated” that union members who were not on the eligible list, who did not possess a permanent union card and who could not prove their status as union members were not allowed to vote; that no provision was made for mail ballots nor for voting by union members unable to get to the polling place; and that employees were not allowed to vote during working hours. He further stated that he had spoken to petitioner who informed him that he was reluctant to discuss the matter since he had retained counsel and was contemplating legal action.
Based upon his investigation, Luposello concluded that the election had not been conducted in accordance with section 8 Oof article IX of the constitution. Following receipt of the report, Schmahl wrote respondent Clark on July 18, 1975 and requested that a new election be held for the officers of the Association. He recommended that provision be made for voting by all members and that eligible voters who were not present or working on election day be given a mail ballot. Petitioner contends that this determination was arbitrary and capricious and contrary to the Constitution of the Association.
Respondents’ principal defenses to the proceeding are that: (1) petitioner failed to exhaust all administrative remedies; and (2) that the dispute is one between members of an unincorporated association which should be determined pursuant to the procedures established by the association; and (3) that the court should nto substitute its judgment for that of the Executive Director of the CSEA with whom the protests were filed. The court finds no merit to respondents’ remaining defenses. In the court’s opinion the petition is sufficient to state a cause of action and CSEA is a proper party respondent.
Where timely and adequate relief is provided for within the *732 framework of an organization, such as a union, an aggrieved member of the union must first exhaust the available administrative remedies before seeking redress from the court (Madden v Atkins, 4 NY2d 283; Browne v Hibbets, 290 NY 459, mot for rearg den 290 NY 919), or show that it would be futile to pursue those remedies (Brignola v Barbieri, 11 AD2d 893). The court, also, will not ordinarily substitute its judgment for that of the governing body of an organization and will only examine the record to ascertain whether the procedure was in accordance with the constitution and by-laws (Matter of Nametra v American Soc. of Travel Agents, 28 Misc 2d 291). However, since the purpose of a constitution and by-laws is to preserve the rights of members against arbitrary action, a proceeding in disregard of such provisions, which results in prejudice to a member, renders judicial intervention appropriate (People ex rel. Deverell v Musical Mut. Protective Union, 118 NY 101, Maltese v Dubinsky, 304 NY 450).
Any rule requiring resort to administrative remedies must obviously be construed in conjunction with those remedies which are available. In the opinion of the court there was no administrative remedy afforded petitioner under the Constitution and By-laws of the Association. The only administrative remedy available was that afforded to those wishing to protest the election results. There are no standards pronounced in, section 9 of article IX, by which protests were to be evaluated. There was no provision made for any fact-finding hearing at which testimony could be given. There was no provision affording petitioner the right to demand a hearing. It would appear, at best, that decisions on election protests were made on a very informal basis. Indicative of this is Schmahl’s letter to Clark, which was written on June 12, 1975. It was only after objections were voiced by petitioner and his attorney that Schmahl requested Luposello to make an investigation. It is further apparent that this investigation was conducted without the benefit of any fact-finding hearings or determinations, so that petitioner’s failure to discuss the matter with Luposello can hardly be construed as a failure to exhaust an "administrative remedy.”
The court, however, would still be reluctant to interfere with an internal determination of the Association and of the CSEA, made pursuant to its by-laws and constitution, were it not for the court’s belief that the determination to invalidate the election of May 28, 1975 and to order a new election was *733 arbitrary. As hereinbefore stated, the final determination made by Schmahl, in which he allowed the protests of Babcock and Ramirez, was based upon his conclusions that balloting by mail should have been permitted and that provision should have been made to permit all members of the Association to vote. However, it would appear from a reading of article IX that the voting procedure to be adopted was within the discretion of the Election Committee of the Association. Section 5, section 7 and section 8 clearly indicate that voting by mail is an option which the Election Committee is authorized, but not required, to adopt. There is nothing in the record to indicate that the Election Committee chose to authorize voting by mail. In that case only members unable to cast their ballots personally could vote by mail, upon showing just cause (art IX, § 8). There is, further, nothing in the record to indicate that any members showed the requisite just cause to vote by mail.
Since the Election Committee did not choose to adopt voting by mail, it was required to declare where the balloting was to be conducted and to provide for notification 5 days before the election (art IX, § 8). Respondents have not contended that the Election Committee failed to adhere to this procedure. There was, therefore, no necessity to accomplish the distribution of ballots and the return of completed ballots in such a manner as to guarantee each member the opportunity to vote without being physically present at the polling place, since this was a requirement only where balloting by mail was permitted (art IX, § 5).
Further, since only CSEA members who had paid their dues were eligible to vote (art IX, § 6), there was nothing improper in compelling a prospective voter to produce a union card and the notification clearly stated that this would be a prerequisite to voting. The court can also discern no merit to the contention that voters were disenfranchised because they were not permitted to vote during working hours. The hours of voting were scheduled from 6:00 a.m. until 6:00 p.m., which was in conformity with section 8 of article IX of the constitution and was sufficient to permit anyone interested in voting to do so.
Accordingly, the court finds that the determination of the Executive Committee of the CSEA and Schmahl, in allowing the protests of Ramirez and Babcock, was arbitrary and was predicated upon a misinterpretation of the functions and powers of the Association Election Committee. The application *734 of petitioner is granted and respondent Association is enjoined from scheduling a new election and directed to forthwith install petitioner as president.