OPINION OF THE COURT
Shirley Werner Kornreich, J.
I. Factual and Procedural Background:
The instant lawsuit arises out of a labor dispute between plaintiff Duane Reade, Inc. and defendants Local 338 of the Retail, Wholesale and Department Store Union, UFCW, AFL-CIO (Local 338 or the union) and its officers (collectively the defendants).
According to the allegations in the amended verified complaint, before 2003, Duane Reade was a party to a collective bargaining agreement with an independent union, the Allied Trades Council (ATC). The agreement recognized ATC as the sole collective bargaining agent for employees of some 142 of Duane Reade’s 230 retail drug stores in the New York metropolitan area.
After said collective bargaining agreement had expired on August 31, 2001, Local 338 sought to “affiliate” with ATC. On May 8, 2003, an “internal election” was held, at which a majority of Duane Reade employees voted against affiliation. Local 338 has alleged that this vote was procured, at least in part, by Duane Reade’s systematic campaign of threats directed against employees who appeared inclined to vote for affiliation or not vote at all, coupled with rewards promised to or bestowed upon employees who would vote against affiliation.[1]
A second election on the affiliation issue was held three weeks later, on May 29, 2003, by mail and telephone ballot. Duane Reade has characterized this second election as “[a]n invalid and meaningless farce,” but in its June 5, 2003 press release, *408 published on PRNewswire, New York, Local 338 reported that ATC had declared the May 8 vote to be “a nullity” because of “massive and unlawful interference by Duane Reade that did not allow employees to cast a free and uncoerced vote.”[2] (See exhibit C to affirmation of Stephen A. Fuchs, dated Sept. 11, 2003.) On this occasion a large majority of participating employees chose affiliation. Duane Reade claims that it and “several disenfranchised ATC members” are challenging the results of this last election, while the union has charged that in the weeks preceding the May 29, 2003 ballot, Duane Reade once again engaged in intimidating “tactics.”
Among the employer’s alleged “tactics,” according to Local 338, was the commencement of the instant action by order to show cause on or around May 28, 2003. In its lawsuit, plaintiff sought to enjoin Local 338 from continuing to trespass on its premises. It was plaintiff’s contention that representatives of Local 338 had been entering its stores during work hours and soliciting its employees, notwithstanding that their activities disturbed plaintiff’s business. Moreover, some of the union representatives were loud, aggressive and disruptive. The court held a hearing at which testimony was adduced to this effect. Plaintiffs two witnesses further testified that employees were solicited by defendants’ representatives while the employees were waiting on customers, and that union spokesmen would become argumentative and refuse to leave the store when ordered by managers to do so. At the conclusion of the hearing, the court ruled that although Local 338 was seeking to affiliate with ATC, it was not currently “a representative of any of the employees of the plaintiff.” (Hearing at 100.) According to the two witnesses it had heard, the court found that Duane Reade had a “no solicitation” policy, which it enforced uniformly except for two charities — colon cancer and diabetes. On behalf of the two charities, Duane Reade employees would ask customers if they would like to make a donation as they were paying for their merchandise at the cash register. In other words, the char *409 ity solicitations did not involve people wandering about the store and interrupting business. (Id. at 101-102.) The court concluded that, on the facts adduced at the hearing, there had been “a trespass under the state law,” which had “caused harm” to the plaintiff, and which “in and of itself [was] irreparable.” (Id. at 103.) Finding that the union had adequate off-premises access to Duane Reade’s employees, and further finding that, on the evidence it had heard, “the plaintiff is likely to win on the issue of whether or not there’s a trespass here,” the court granted plaintiff a preliminary injunction, barring Local 338’s representatives from coming onto Duane Reade’s premises to solicit votes. However, the injunction was to expire at noon the following day (i.e., May 29, 2003), at which time all votes would have been cast. (Id. at 103-106.)
On June 11, 2003, the union filed its first set of unfair labor practice charges against Duane Reade with the NLRB. On June 16, 2003, plaintiff filed the within amended verified complaint, seeking $1.4 million in damages based on four legal theories, as follows: (1) trespass; (2) tortious interference with prospective business relations, in that defendant’s representatives disturbed Duane Reade employees while they were helping customers and had solicited confidential information by means of a fraudulent e-mail; (3) fraud, in that someone thought to be a union operative, falsely representing himself to be the chief executive officer (CEO) of Duane Reade, sent an e-mail to supervisory Duane Reade employees asking for their “feed-back” on a recent meeting held with their managers, apparently regarding the upcoming affiliation vote;[3] and (4) defamation “per se,” in that the characterizations of Duane Reade in the union’s June 5, 2003 press release, quoted above, which were published without privilege and with “actual malice,” exposed the pharmacy to public contempt, ridicule, aversion and disgrace, while tending to injure it in its trade, business or profession.
By notice dated July 31, 2003, the defendants brought on the instant preanswer motion to dismiss, arguing that the court must dismiss the complaint (1) because of plaintiffs failure to plead that the union’s alleged tortious acts were authorized by *410 the entire union membership, (2) because all of Duane Reade’s state claims are preempted by the National Labor Relations Act (NLRA), and (3) because plaintiffs four causes of action fail to state a claim for which relief can be granted. Plaintiff has opposed the application and has cross-moved to amend its complaint.
II. Discussion:
A. Whether dismissal is required for plaintiffs failure to plead that defendants’ acts were authorized or ratified by the membership:
In Martin v Curran (303 NY 276, 280, 282 [1951]), New York’s Court of Appeals held that, in order to state a claim accusing a labor union and/or its officials in their representative capacities of committing, e.g., a tort, a plaintiff must allege and prove that each individual union member authorized or ratified the unlawful action. This is because
“[a] voluntary, unincorporated membership association is neither a partnership nor a corporation. It is not an artificial person, and has no existence independent of its members. No agency of one member for another is implied. A part of the members of a voluntary organization cannot bind the others without their consent before the act which it is claimed binds them is done, or they, with full knowledge of the facts, ratify and adopt it.” (Id. at 280 [citations omitted].)
Therefore, “suits against association officers, whether for breaches of agreements or for tortious wrongs, [are limited] to cases where the individual liability of every single member can be alleged and proven.” (Id. at 282.) Because the plaintiff in Martin had failed to allege that the individual members of the union had authorized or ratified the tortious conduct at issue, the dismissal of the action was affirmed. (Id. at 282-283; see also Salemeh v Toussaint, NYLJ, July 7, 2003, at 19, col 1 [Sup Ct, NY County] [actions against union for “tortious wrongs” are limited “to cases where the individual liability of every single member can be alleged and proven”]; Piniewski v Panepinto, 267 AD2d 1087, 1088 [4th Dept 1999] [assault claim against union dismissed because complaint “fails to allege that the individual (union) members . . . authorized or ratified the assault”]; Walsh v Torres-Lynch, 266 AD2d 817 [4th Dept 1999] [breach of duty of fair representation claim against union dismissed for plaintiffs failure to allege that each member of the union ratified or approved the acts constituting the alleged breach].)
*411 Plaintiffs arguments in opposition to defendant’s theory are unpersuasive. For example, plaintiff tries to extend the reasoning in Madden v Atkins (4 NY2d 283 [1958]) to the facts of this case, notwithstanding the fact that Madden carved out a very narrow exception to the general rule in Martin. That is, the Madden court ruled that when the plaintiff is a union member suing his union for damages arising from his wrongful expulsion from said union, plaintiff need prove only that his expulsion was “brought about by action on the part of the membership, at a meeting or otherwise, in accordance with the union constitution.” (Madden at 296.) Significantly, several courts applying New York law have refused to extend the Madden exception to Martin-governed tort actions like the one at bar. (See, e.g., Morrissey v National Mar. Union of Am., 544 F2d 19, 33 [2d Cir 1976] [court overturned damages award against union because plaintiff failed to demonstrate ratification of tortious acts by every member of union as required by Martin, remarking that Madden did not restrict Martin except to dispense with 100% ratification in “a suit by a union member against a union for damages, arising from a wrongful expulsion, . ; . (although) even in that case (the court) required some participation by the membership”]; Building Indus. Fund v Local Union No. 3, Intl. Bhd. of Elec. Workers, AFL-CIO, 992 F Supp 192, 194 [ED NY 1996] [summary judgment granted to defendant union because of plaintiff’s failure to allege membership ratification as required by Martin, the court ruling that “(s)ince this case does not involve a claim of wrongful expulsion, or even a claim by a union member against a union, Madden is inapplicable”].)
Similarly inapposite are plaintiffs arguments regarding “apparent authority,” “delegation” and “agency,” as these theories are expressly excluded from a Martin analysis (“No agency of one member for another is implied” 303 NY at 280). Nor does plaintiff advance its case by invoking language which it has added to its second amended verified complaint to the effect that “the union membership had delegated [to defendants] its authority to take such [tortious] actions on their behalf.”[4]
Again relying on the second amended verified complaint — where for the first time Durso, DeMartino, a new defendant named Debra Servida, and 50 John Does are also *412 sued, in their individual capacities — plaintiff contends that membership ratification is not required to support its claims against these persons as individuals. However, it is well established that “union officers and employees are not individually liable to third parties for acts performed as representatives of the union.” (Covello v Depository Trust Co., Local 153, 88 F Supp 2d 59, 61 [ED NY 2000], quoting Atkinson v Sinclair Ref. Co., 370 US 238 [1962], overruled in part on other grounds sub nom. Boys Mkts., Inc. v Retail Clerks Union, Local 770, 398 US 235 [1970]; see also Butler v McCarty, 191 Misc 2d 318, 327 [Sup Ct, Madison County 2002], affd 306 AD2d 607 [3d Dept 2003] [causes of action against individual union officer defendants not sustainable “because all of the acts attributed to them . . . occurred within the scope of their activities as union members”].)
B. Preemption by the NLRA:
Even if the Martin rule did not apply, the court would be obliged to dismiss the complaint, and to deny plaintiffs cross motion to amend, because its causes of action are preempted by the NLRA.
1. Trespass:
It is well established that a state court lacks jurisdiction over a matter involving conduct arguably either protected or prohibited by federal labor law. (See San Diego Bldg. Trades Council v Garmon, 359 US 236, 244-245 [1959].) However, the critical inquiry in deciding state versus federal jurisdiction is “whether the controversy presented to the state court is identical to ... or different from . . . that which could have been, but was not, presented to the [NLRB, for] it is only in the former situation that a state court’s exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the [NLRB].” (See Sears, Roebuck & Co. v San Diego County Dist. Council of Carpenters, 436 US 180, 197 [1978].) The instant case is different from Sears, Roebuck in that, here, the controversy has been presented to the NLRB, albeit after this court’s ruling, and the conduct currently being assessed by the Board is identical to that being challenged in the instant lawsuit.
That is, when this action was last before the court, on May 28, 2003, the NLRB was not yet involved in the parties’ dispute. However, since that time the union has undertaken to file its charges against Duane Reade (on June 11 and June 27, 2003), and the fact that the NLRB has assumed responsibility for the *413 altercation is evidenced in the complaint that the NLRB issued on July 31, 2003, following its own investigation. Amongst the allegations in the NLRB’s complaint are numerous instances on May 5, 6, 7 and 8, 2003 where, while on store premises, several named managers of individual Duane Reade stores threatened employees with transfer, termination, and/or schedule and work assignment changes if the employees voted “yes” for affiliation in the election scheduled for May 8, 2003. (See NLRB complaint ¶¶ 8, 9, 10.) Also on store premises and on the same dates, named store managers asked employees how they intended to vote, told employees that a list would be kept of how employees voted in the election, distributed “No” buttons to employees, offered free lunches to “no”-voting employees, promised merit raises to “no’’-voting employees, promised to pay employees for the time they spent voting, and promised free transportation to and from the voting location to those employees promising to vote “no” to affiliation. (Id. ¶¶ 11-15.)
Although as a general rule an employer may bar nonemployee union organizers from his property as trespassers, a union may gain a right of access if it can show either that it has no other reasonable means of communicating its organizational message to the employees or that the employer’s access rules discriminate against union solicitation. (Sears, Roebuck, 436 US at 205; see also Lechmere, Inc. v National Labor Relations Bd., 502 US 527 [1992]; National Labor Relations Bd. v Babcock & Wilcox Co., 351 US 105 [1956].) It has been held that an employer’s no-solicitation policy is discriminatory where it allows pro-employer information to be disseminated in the workplace while prohibiting comparable distribution of pro-union information. (See Cleveland Real Estate Partners v National Labor Relations Bd., 95 F3d 457, 465 [6th Cir 1996]; but cf. Sandusky Mall Co. v National Labor Relations Bd., 242 F3d 682, 689-692 [6th Cir 2001].)
In light of the evidence unearthed by the Board that Duane Reade’s managers subjected their employees to a campaign of antiaffiliation propaganda while they were on store premises, and where the NLRB has clearly taken charge of the instant dispute, the plaintiff’s trespass claim must be considered preempted. The Board is now the proper forum for taking and evaluating further evidence concerning Duane Reade’s potentially discriminatory no-solicitation policy, and the “trespass” vel non character of defendants’ incursions onto Duane Reade’s *414 property.[5] (See San Diego Bldg. Trades Council v Garmon, supra at 244-245.)
If, in an exercise of its primary jurisdiction, the NLRB concludes that the defendants committed an actionable trespass, Duane Reade may bring a new tort action, provided that it is able to demonstrate the quantum of its damages and willing to provide the union with full, unfettered discovery. (See San Diego Bldg. Trades Council v Garmon, supra at 244-245; Columbia Broadcasting Sys. v McDonough, 8 AD2d 695 [1st Dept 1959], affd 6 NY2d 962 [1959].) The court further notes that even where a union’s behavior has been adjudged an “unfair labor practice” by the Board, it is not actionable in tort in state court unless the state has a “compelling interest” in adjudicating it — viz., when the behavior is so extremely intimidating, destructive or violent as to threaten domestic peace or to earn the epithet “outrageous.” (See San Diego Bldg. Trades Council v Garmon, supra at 247 [“we have allowed the States to grant compensation for the consequences, as defined by the traditional law of torts, of conduct marked by violence and imminent threats to the public order”]; see also Farmer v United Bhd. of Carpenters & Joiners, 430 US 290 [1977] [no provision of NLRA protected defendant’s “outrageous conduct,” whereas the State, on the other hand, had substantial interest in protecting its citizens from the kind of abuse of which plaintiff complained in cause of action alleging intentional infliction of emotional distress]; Linn v United Plant Guards of Am., Local 114, 383 US 53 [1966] [protected debate in unionizing activity can be uninhibited, robust, wide open, even vehement, caustic and unpleasantly sharp, but loses NLRA protection, and becomes subject to compelling state interest, if complainant can plead and prove that defamatory statements were made with malice and injured him]; United Constr. Workers v Laburnum Constr. *415 Corp., 347 US 656 [1954] [contractor could bring state suit for damages where union’s agents so threatened and intimidated its officers and employees that contractor was unable to continue with its projects].)
Finally, contrary to plaintiffs assertion, the fact that a state court can award compensatory and punitive damages for the torts committed by a union, whereas the NLRB cannot, does not, without more, defeat preemption. As the Supreme Court observed in San Diego Bldg. Trades Council v Garmon (supra at 247): “[S]ince remedies form an ingredient of any integrated scheme of regulation, to allow the State to grant a remedy here which has been withheld from the National Labor Relations Board only accentuates the danger of conflict.”
2. Tortious Interference with Prospective Business Relations:
To maintain a claim for tortious interference with prospective business relations, a plaintiff must allege not only that defendant has interfered with an identified business relationship, but also that it did so either (i) with the sole purpose of harming plaintiff, or (ii) by means that were dishonest, unfair or improper. (See Advanced Mar. Tech. v Burnham Sec., 16 F Supp 2d 375, 385 [SD NY 1998]; Golden Gulf Corp. v Jordache Enters., 896 F Supp 337, 340 [SD NY 1995].) Plaintiff must also demonstrate that an actual business relationship was in fact injured. (See Nadel v Play-By-Play Toys & Novelties, Inc., 208 F3d 368, 382 [2d Cir 2000].)
Plaintiff alleges that defendants interfered with its prospective business relations by employing two “improper means”: (a) by “trespassing” and interfering with its employees while they were helping customers, and (b) by sending a fraudulent e-mail seeking confidential information from said employees (this claim will be discussed more fully under “3. Fraud,” below).[6]
As indicated under the “Trespass” rubric above, the NLRB must now determine whether defendants’ intrusions upon Duane Reade’s property were “improper.” Similarly, it is a judgment call within the purview of the NLRB to determine if the e-mail sent to Duane Reade employees was indeed from a union operative, and whether it constituted a “dishonest” and/or “unfair” “means” of “harming” the plaintiff. Furthermore, it is singularly within the competence of the NLRB to assess the defendants’ “ends,” or the motivations for their *416 behavior. However, the court notes in passing that even plaintiff does not seriously allege that defendants were motivated by gratuitous malevolence or disinterested malice (see discussion in section 4 below). Rather, defendants were concededly motivated by their desire to win their union affiliation campaign. (Compare Missigman v USI Northeast, Inc., 131 F Supp 2d 495, 514-515 [SD NY 2001].)
In any event, where a state court plaintiff could have filed an unfair labor practice claim with the NLRB based on the same facts as those underlying his state law claim (e.g., plaintiff could have complained to the NLRB of defendants’ alleged disruption of Duane Reade’s customer service), and where asserting jurisdiction over a state law claim requires the court to address the same issues as the NLRB would resolve in adjudicating the unfair labor practice claim, the court’s jurisdiction must yield to the NLRB’s authority to uniformly administer the NLRA. (See Jou-Jou Designs v International Ladies’ Garment Workers’ Union, Local 23-25, 94 AD2d 395, 403-404 [1st Dept 1983], affd 60 NY2d 1011 [1983].)
3. Fraud:
Similarly, plaintiff could have presented to the NLRB any claims it had concerning defendants’ allegedly unfair affiliation campaign tactics insofar as they are represented in the “fraudulent e-mail,” since the complained-of e-mail was an effort to elicit only “proprietary” information relating to Duane Reade’s campaign to defeat the proposed affiliation. Since plaintiff’s “fraud” claim requires the court to evaluate the “means” purportedly used by defendants to gain an unfair advantage in the affiliation contest, it is preempted by the NLRA. (See Jou-Jou Designs v International Ladies’ Garment Workers’ Union, Local 23-25, supra at 403-404.) Moreover, Duane Reade fails to allege in its fraud claim that defendants engaged in such outrageous conduct that the State’s “compelling interest” jurisdiction was triggered under San Diego Bldg. Trades Council v Garmon (supra at 247-248; see also Wolf St. Supermarkets v Mc-Partland, 108 AD2d 25, 30 [4th Dept 1985], appeal dismissed 65 NY2d 785 [1985], 68 NY2d 833 [1986]).[7]
4, Defamation:
As the court made clear in Linn (383 US 53, supra), a participant in a labor dispute may sue for defamation only where *417 the defendant has, with malice, circulated false statements about plaintiff and has demonstrably injured him. Otherwise, “robust” and even “vehement, caustic and unpleasantly sharp” verbal attacks are to be expected in the labor dispute context, and are protected by the NLRA. (See Old Dominion Branch No. 496, Natl. Assn. of Letter Carriers v Austin, 418 US 264, 283 [1974] [reference to employee as “scab” in union newsletter was protected because NLRA gives union license to use intemperate, abusive or insulting language without fear of restraint or penalty if it believes such rhetoric to be effective means to make its point].)
Duane Reade has not established that union president Durso’s remarks accusing Duane Reade of interfering with its employees’ right to cast a free and uncoerced vote meet the Linn standard. For one thing, to extrapolate from the NLRB’s complaint, the assertions may well be true, and truth is an absolute defense to any charge of defamation. Secondly, Duane Reade cannot show that the remarks were made with “malice,” that is, with knowledge of their falsity or with reckless disregard for their truth or falsity. Finally, the comments are, on their face, an expression of the speaker’s “opinion.” (See Austin, 418 US at 280-284.) Union newsletter readers doubtless expected that the president of the union would have a poor opinion of an employer who had been fighting the union’s affiliation efforts tooth and nail.
In any event, the issue is effectively preempted, because it would require the court to decide a matter which directly overlaps with an issue that must be resolved by the NLRB in its decision in the unfair labor practice complaint pending before it. (See Jou-Jou Designs, supra at 403-404.) Here, Durso’s press release statements are coextensive with the unfair labor practice charges pending before the NLRB, and the NLRB must determine if the charges (and, secondarily albeit perforce, Durso’s remarks) are true or false. Accordingly, it is ordered that defendants’ motion to dismiss the complaint is granted, and the complaint is dismissed with costs and disbursements to defendants as taxed by the clerk of the court, and it is further ordered that the clerk is directed to enter judgment accordingly; and it is further ordered that plaintiffs cross motion for leave to amend its complaint is denied.

. Appended to defendants’ counsel’s September 24, 2003 affirmation is a copy of an unfair labor practice complaint issued against Duane Reade by the National Labor Relations Board (NLRB) on or around July 31, 2003 (a consolidation of No. 2-CA-35441 and No. 2-CA-3558, both filed by Local 338 in June 2003), relative to the events at issue here. The complaint lists names and dates of instances when “Duane Reade intimidated its employees, threatened its employees with transfer and/or termination if they voted to affiliate, unlawfully interrogated, monitored, watched and photographed its employees with respect to the affiliation vote, and, in general, interfered with its employees’ right to a free and informed vote.” The NLRB director who signed the complaint set the matter down for a hearing before an administrative law judge, to commence on October 27, 2003. Duane Reade answered the complaint, without moving to dismiss it, on September 15, 2003.

. This press release also quoted Local 338 president John R Durso as saying: “Today’s statements by Duane Reade are more examples of their dirty tactics and methods of intimidation that have marked the election process . . . We’re dismayed by Duane Reade’s disregard of its employees and their right to a free election.” The union related in the same press release that the new mail/telephone ballot “was overseen by the American Arbitration Association and featured an interactive voice response voting system that allowed employees to vote from their homes and be completely protected from further intimidation by Duane Reade.”

. The e-mail, ostensibly sent by Duane Reade’s CEO, Tony Cuti, read: “It is to [sic] my understanding that all ASM’s and Managers had a meeting in the past week or yesterday with their DM’s. What I need from you is the details of this meeting (what you gained from the pow wow) and if you think it was helpful and if you should have more of this confrences [sic] in the future.”

. Plaintiff proceeds as if the second amended verified complaint was already the effective pleading in the case, contending that it is entitled to amend its complaint as of right under CPLR 3025 (a) so long as defendants’ CPLR 3211 motion remains undecided and no answer has been served.

. The court finds that it did not disturb the NLRB’s authority by issuing an overnight preliminary injunction, from May 28 to May 29, 2003, following the hearing. The court in Sears, Roebuck & Co. v San Diego County Dist. Council of Carpenters (supra at 198) ruled that a state court could adjudicate the “trespassory” or “locational” aspects of, e.g., a picketing, so long as it did not impinge upon the Board’s exclusive authority to rule on the “recognitional or work-reassignment objective” — i.e., the substantive legality — of the union’s behavior. By temporarily enjoining defendants from soliciting Duane Reade’s employees inside its stores, the court has therefore already determined the narrow issue that Sears carved out for it, and Duane Reade has exhausted the full measure of state court relief available to it under Sears. (See also Billy Jack for Her v New York Coat, Suit, Dress, Rainwear & Allied Workers’ Union, 511 F Supp 1180, 1190 [SD NY 1981].)

. Plaintiffs “tortious interference” claim is thus essentially an amalgam of causes of action Nos. 1 and 3.

. The court does not agree with plaintiffs characterization of defendants’ subterfuge as, inter alia, an instance of “computer fraud” and “identity theft” of momentous interest to “State law.”