■ In the Matter of Raymond Montero, Appellant, v Police Association of the City of Yonkers, Inc., Also Known as Yonkers Police Benevolent Association, Respondent. (And Another Title.) [49 NYS3d 746]—

In a proceeding pursuant to CPLR article 78 to review a determination of the Police Association of the City of Yonkers, Inc., also known as Yonkers Police Benevolent Association, dated June 2, 2014, expelling the petitioner from its membership, the petitioner appeals from a judgment of the Supreme Court, Westchester County (Neary, J.), entered December 1, 2014, which denied the petition and dismissed the proceeding.

Ordered that the judgment is reversed, on the law, with costs, the petition is granted, and the determination dated June 2, 2014, is annulled.

The petitioner, then a member of the respondent, Police Association of the City of Yonkers, Inc., also known as Yonkers Police Benevolent Association, was charged by the respondent with committing certain misconduct. The petitioner was given notice of the charges and of a scheduled hearing on the charges, although he chose not to appear. A determination was made on June 2, 2014, to expel the petitioner. The petitioner commenced this CPLR article 78 proceeding to review that determination.

" '[W]here the constitution and by-laws of a voluntary association reasonably set forth grounds for expulsion and provide for a hearing upon notice to the member, judicial review of such proceedings is unavailable, unless the reason for expulsion is not a violation of the constitution or by-laws or is so trivial as to suggest that the action of the association was capricious or corrupt, or unless the association failed to administer its own rules fairly' " (*Matter of Kelly v Northport Yacht Club, Inc.*, 44 AD3d 858, 859 [2007], quoting *Bloch v Veteran Corps. of Artillery, State of N.Y.*, 61 AD2d 772, 773 [1978]; *see Matter of Marandino v Westchester Country Club, Inc.*, 33 AD3d 800, 800-801 [2006]; *see also* CPLR 7803 [3]).

Here, the respondent's determination that the petitioner committed conduct that was "prejudicial to the welfare of the Association," in violation of the bylaws, was arbitrary and capricious (*see Madden v Atkins*, 4 NY2d 283, 292-293 [1958]). The petitioner was charged with providing "information" to the author of articles published online, providing that author with an email from the respondent's president to the members, publishing that email online himself, with comments, and being involved in an altercation with another member. Other than the single identified email, there is no basis in the record on which to determine what, if any, other information was provided to the author of the articles by the petitioner, and whether such unidentified information was detrimental to the respondent.

As to the email, although the respondent characterizes it as

"confidential," there is no reason to conclude that the email, which was sent to all of the respondent's members, was confidential. Indeed, the email contained a statement indicating that sharing the email was merely "discouraged." In addition, while the respondent claims that certain misinformation disseminated during a time the respondent was negotiating a contract with the City of Yonkers complicated the contract negotiations, the respondent does not explain how the shared email, or the comments made by the petitioner on that email, had this effect. In fact, the record provides no support for a determination that the petitioner's conduct of sharing the widely distributed email or making certain online comments about the email, was detrimental to the welfare of the respondent. "If there be any public policy touching the government of labor unions, and there can be no doubt that there is, it is that traditionally democratic means of improving their union may be freely availed of by members without fear of harm or penalty. And this necessarily includes the right to criticize current union leadership . . . . The price of free expression and of political opposition within a union cannot be the risk of expulsion or other disciplinary action. In the final analysis, a labor union profits, as does any democratic body, more by permitting free expression and free political opposition than it may ever lose from any disunity that it may thus evidence" (*id.* at 293, citing *Polin v Kaplan*, 257 NY 277, 284 [1931]).

Moreover, there is no rational basis for the conclusion that a brief physical altercation between the petitioner and another member "prejudice[d] the welfare" of the respondent.

The parties' remaining contentions either are without merit or need not be reached in light of our determination. Hall, J.P., Austin, Sgroi and Connolly, JJ., concur.