■ Wajeh Salemeh, Appellant, v Roger Toussaint, as President, on Behalf of Local 100, Transport Workers Union et al., Respondents, et al., Defendant. [810 NYS2d 1]—

Order, Supreme Court, New York County (Edward H. Lehner, J.), entered June 3, 2004, which, inter alia, granted the motion of defendants-respondents for summary judgment dismissing the complaint as against them, modified, on the law, to the extent of denying defendant McCann partial summary judgment on the first, second, third and fifth causes of action, alleging assault, battery, trespass and prima facie tort, respectively, reinstating these claims against McCann individually, and otherwise affirmed, without costs.

Intentional tort claims against Local 100 were properly dismissed because plaintiff security guard failed to plead that the entire membership of Local 100 authorized in advance, or subsequently ratified, the alleged assault upon him (*Martin v Curran*, 303 NY 276, 282 [1951]; *Duane Reade, Inc. v Local 338 Retail, Wholesale, Dept. Store Union, UFCW, AFL-CIO*, 17 AD3d 277 [2005]). Plaintiff's argument that the stringent pleading and evidence requirements for maintaining an action against an

unincorporated association, such as Local 100, should be relaxed is more appropriately directed to the Legislature (*see Martin* at 282). The essence of plaintiff's remaining causes of action against Local 100, although labeled as sounding in negligence, is assault and thus they were properly dismissed as well. "[O]nce intentional offensive contact has been established, the actor is liable for assault and not negligence" (*Panzella v Burns*, 169 AD2d 824, 825 [1991]). "[A] lack of care 'does not convert the action from intentional tort to negligence' " (*Messina v Matarasso*, 284 AD2d 32, 36 [2001]; *see also Trott v Merit Dept. Store*, 106 AD2d 158, 160 [1985]).

However, the order on appeal incorrectly dismissed the entire complaint against McCann individually, when only partial summary judgment as to certain causes of action was sought in the underlying motion. Since excessive relief was granted, the order is modified, and the complaint reinstated, to that extent, as against McCann individually. Concur—Andrias, J.P., Friedman, Nardelli and Malone, JJ.

Saxe, J., dissents in part in a memorandum as follows: On October 4, 2004, the Transport Workers Union of America, Local 100, AFL-CIO (Local 100) was holding a union-organizing rally on the premises of New York Waterways Pier 79, on West 38th Street in Manhattan, attempting to solicit new union members from among New York Waterways employees. The members of Local 100 present at the rally, including defendant Frank McCann, Jr., an organizer of the rally, were all wearing light blue T-shirts bearing the Local 100 TWU insignia, and were chanting slogans and handing out union flyers.

Plaintiff Wajeh Salemeh, a security guard employed by Arcorp Properties, was assigned to work that day at New York Waterways. Because the rallying union members were trespassing on the New York Waterways pier, plaintiff approached them and requested that they leave. In response, a mob of approximately 40 union members, including McCann, assaulted and severely beat him.

Salemeh commenced this personal injury action against Roger Toussaint, as President of Local 100, Frank McCann, Jr., and a number of fictitious individuals and entities.

Having previously dismissed the claim against the parent organization, the Transport Workers Union of America, the motion court in the present motion granted summary judgment to defendants McCann, Jr. and Local 100, dismissing the complaint. It reasoned that the Union is an unincorporated association organized under the laws of New York, and that for the purposes of imposing liability, an unincorporated association such as a

labor union has no legal identity independent from that of its members; only those members who expressly or impliedly authorized or ratified the specific acts in question may be held legally accountable.

The motion court viewed its decision as dictated by a 1951 Court of Appeals case, *Martin v Curran* (303 NY 276 [1951]), which was decided by a sharply split bench (4-3). That case, I respectfully submit, was of dubious validity when decided and is even less deserving of recognition today, almost 55 years later. Accepting and following the reasoning of the dissent in *Martin v Curran*, I vote to reverse and deny the motion of Roger Toussaint, as President of Local 100.

In *Martin v Curran*, the plaintiff sued a union for defamatory statements contained in the union's official newspaper. The Court of Appeals affirmed the dismissal of the complaint as against the union, holding that in regard to an unincorporated association, because "[n]o agency of one member for another is implied" (*id.* at 280), the liability to be enforced in any such suit is "that of the individual members as individuals, and so the cause of action has to be one 'for or upon which the plaintiff may maintain such an action . . . against all the associates, by reason of their . . . liability therefor, either jointly or severally' " (*id.* at 281, quoting General Associations Law § 13). In conclusion, the Court explained that under General Associations Law § 13, "for better or worse, wisely or otherwise, the Legislature has limited such suits against association officers [in their representative capacity], whether for breaches of agreements or for tortious wrongs, to cases where the individual liability of every single member can be alleged or proven. Despite procedural changes, substantive liability in such cases is still, as it was at common law, 'that of the members severally' (*Sperry Products, Inc. v Association of Amer. R.R.*, 132 F. 2d 408, 410, certiorari denied 319 U. S. 744). 'In the kind of association now under consideration, only those members are liable who expressly or impliedly with full knowledge authorize or ratify the specific acts in question' (Wrightington on Unincorporated Associations and Business Trusts, § 64)" (*Martin*, 303 NY at 282).

Therefore, despite the fact that a similar type of action under federal law states a claim against a union for pleading purposes (*see Yellow Bus Lines, Inc. v Drivers, Chauffeurs & Helpers Local Union 639*, 883 F2d 132, 135-136 [DC Cir 1989], *cert denied* 501 US 1222 [1991]), under the existing law of New York as stated in *Martin v Curran*, the motion court's decision here was indeed correct.

But, that should not end our analysis, especially where an unremedied injustice exists, as here. Our common law is sufficiently elastic, and the application of our discretion to promote fairness and justice must be available in such an instance (*see generally* Holmes, The Common Law, at 1-2 [Dover ed]; Cardozo, Nature of the Judicial Process, at 24-28 [Yale Univ Press]).

The policy question presented here is a rhetorical one: how can the law permit a union to be relieved of collective responsibility *as a matter of law*, and to avoid any financial obligation, when a group of its members, marching under its banner and doing an activity for its benefit, causes severe injury with acts of violence, simply because the legal form under which it chose to conduct its business was that of an unincorporated association?

Chief Justice William Howard Taft addressed these issues years ago in *Mine Workers v Coronado Coal Co.* (259 US 344 [1922]), stating: "It would be unfortunate if an organization with as great power as this International Union has in the raising of large funds and in directing the conduct of 400,000 members in carrying on, in a wide territory, industrial controversies, and strikes out of which so much unlawful injury to private rights is possible, could assemble its assets to be used therein free from liability for injuries by torts committed in course of such strikes. To remand persons injured to a suit against each of the 400,000 members, to recover damages and to levy on his share of the strike fund, would be to leave them remediless" (*id.* at 388-389).

It is an inappropriate burden to force upon injured plaintiffs, who could bring suit against any other form of organization, to prove that *every* member of a union had authorized or ratified the assault and battery which caused them physical harm before being able to hold the union liable. Realizing that it was virtually impossible to obtain the 100% ratification obstacle that victims of union violence must overcome, the Court in *Mine Workers v Gibbs* (383 US 715 [1966]) noted: "There can be no rigid requirement that a union affirmatively disavow such unlawful acts as may previously have occurred. What is required is proof, either that the union approved the violence which occurred, or that it participated actively or by knowing tolerance in further acts which were in themselves actionable under state law or intentionally drew upon the previous violence for their force" (*id.* at 739 [citation omitted]).

Our state law has not moved yet in the direction of similar claims asserted in federal actions. But, in *Martin v Curran* (*supra*), Judge Conway, in dissent, hit the nail on the head when

he noted that section 13 of the General Associations Law is simply a procedural law, not a grant of substantive rights to a union existing as an unincorporated association. He presciently noted that General Associations Law § 13 "was enacted to convenience a plaintiff, such as we have here, by enabling him to sue and more promptly reach the property of the association for the satisfaction of any judgment he may recover, without naming as defendants hundreds or even thousands of members of an association—in this instance no doubt employed on ships scattered around the world. . . . It was not intended to affect or derogate from the common law of tort, had no such effect and a court is not free to hold that there was such derogation accomplished by indirection and without expressed intention" (303 NY at 289-290).

Recognizing then that since a union may sue as an entity under section 12 of the General Association Law for a libel published against its officers, Judge Conway noted that it would be incongruous if it were not obligated to respond in damages for libel as a defendant (*id.* at 294).

That is the essence of the position I propose. I believe that there is no good reason to give continuing recognition to a decision that is not sound on the law and more importantly defies common sense. Accordingly, I vote to reinstate the complaint against the union. [*See* 5 Misc 3d 1032(A), 2003 NY Slip Op 51737(U) (2003).]