[12 NE3d 436, 989 NYS2d 438]

EUGENE PALLADINO, Appellant, v CNY CENTRO, INC., et al., Respondents.

Argued February 18, 2014; decided April 8, 2014

**POINTS OF COUNSEL**

*Robert Louis Riley*, Syracuse, for appellant. The Appellate Division, Fourth Department committed reversible error of law in finding that pleading and proof of unanimous ratification by members of an unincorporated association, as expressed by this Court in *Martin v Curran* (303 NY 276 [1951]), was applicable to a labor organization in an action commenced against a labor organization for breach of duty of fair representation rather than the exception to unanimous ratification carved out by this Court in *Madden v Atkins* (4 NY2d 283 [1958]) where elected union officials are delegated with authority to act on behalf of the union membership. (*Mine Workers v Coronado Coal Co.*, 259 US 344; *National Protective Assn. of Steam Fitters & Helpers v Cumming*, 170 NY 315; *Kirkman v Westchester Newspapers, Inc.*, 287 NY 373; *United States v White*, 322 US 694; *International Union, United Mine Workers of Am. v United States*, 177 F2d 29; *McCabe v Goodfellow*, 133 NY 89; *Busby v Electric Util. Empls. Union*, 147 F2d 865; *National Variety Artists, Inc. v Mosconi*, 169 Misc 982; *Pandolfo v Bank of Benson*, 273 F 48; *Blek v Wilson*, 262 NY 253.)

*Blitman & King LLP*, Syracuse (*Kenneth L. Wagner* and *Bryan T. Arnault* of counsel), for Charles Watson and another, respondents. I. The *Martin* rule should not be overturned (*Martin v Curran*, 303 NY 276 [1951]). (*McCabe v Goodfellow*, 133 NY 89; *Cenven, Inc. v Bethlehem Steel Corp.*, 41 NY2d 842; *Matter of Garwitt*, 41 NY2d 845; *Matter of Higby v Mahoney*, 48 NY2d 15; *People v Hobson*, 39 NY2d 479; *Great N. Ins. Co. v Interior Constr. Corp.*, 7 NY3d 412; *People v Rudolph*, 21 NY3d 497; *People v Taylor*, 9 NY3d 129; *City of Buffalo v Cargill, Inc.*, 44 NY2d 7.) II. The Appellate Division correctly applied the *Martin* rule to the plaintiff's duty of fair representation claims. (*Ford Motor Co. v Huffman*, 345 US 330; *Vaca v Sipes*, 386 US 171; *Matter of Civil Serv. Bar Assn., Local 237, Intl. Bhd. of Teamsters v City of New York*, 64 NY2d 188; *Smith v Sipe*, 67 NY2d 928; *Ponticello v County of Suffolk*, 225 AD2d 751; *Altimari v Parker*, 189 AD2d 982; *Matter of Sapadin v Board of Educ. of City of N.Y.*, 246 AD2d 359; *Symanski v East Ramapo Cent. School Dist.*, 117 AD2d 18; *Matter of Civil Serv. Empls. Assn. v Public Empl. Relations Bd.*, 132 AD2d 430, 73 NY2d 796; *Herington v Civil Serv. Empls. Assn.*, 130 AD2d 961.)

*Ferrara, Fiorenza, Larrison, Barrett & Reitz, P.C.*, East Syracuse (*Craig M. Atlas* of counsel), for CNY Centro, Inc., respondent. I. In the absence of action by the legislature, the well-settled rule articulated by this Court in *Martin v Curran* (303 NY 276 [1951]) should not be disturbed. (*Lahendro v New York State United Teachers Assn.*, 88 AD3d 1142; *Walsh v Torres-Lynch*, 266 AD2d 817; *McCabe v Goodfellow*, 133 NY 89; *Mazurajtis v Maknawyce*, 93 Misc 337; *Madden v Atkins*, 4 NY2d 283; *Saint v Pope*, 12 AD2d 168; *Butler v McCarty*, 191 Misc 2d 318; *Duane Reade, Inc. v Local 338 Retail, Wholesale, Dept. Store Union, UFCW, AFL-CIO*, 17 AD3d 277, 5 NY3d 797; *Morrissey v National Mar. Union of Am.*, 544 F2d 19; *Salemeh v Toussaint*, 25 AD3d 411.) II. The union did not breach its duty of fair representation toward the plaintiff. (*Smith v Sipe*, 67 NY2d 928; *Matter of Burning v Niagara Frontier Tr. Metro Sys.*, 273 AD2d 830, 95 NY2d 765; *Ahrens v New York State Pub. Empls. Fedn., AFL-CIO*, 203 AD2d 796; *Mellon v Benker*, 186 AD2d 1020; *Matter of Garvin v New York State Pub. Empl. Relations Bd.*, 168 AD2d 446, 77 NY2d 805; *Matter of Civil Serv. Empls. Assn. v Public Empl. Relations Bd.*, 132 AD2d 430, 73 NY2d 796; *Scott v Machinists Auto. Trades Dist. Lodge No. 190 of N. Cal.*, 827 F2d 589; *Smiley v Daimler Chrysler*, 589 F Supp 2d 471; *McGovern v International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local No. 773*, 447 F Supp

368; *Matter of Civil Serv. Bar Assn., Local 237, Intl. Bhd. of Teamsters v City of New York*, 64 NY2d 188.) III. The Appellate Division correctly granted summary judgment dismissing the plaintiff's breach of contract claims against CNY Centro, Inc. (*Matter of Board of Educ., Commack Union Free School Dist. v Ambach*, 70 NY2d 501; *Matter of Rine v Higgins*, 244 AD2d 963; *Berlyn v Board of Educ. of E. Meadow Union Free School Dist.*, 80 AD2d 572, 55 NY2d 912; *Michael F. Wolfson, M.D., M.P.H. v Preventative Medicine Clinical Servs.*, 26 AD3d 751; *Yoonessi v State of New York*, 289 AD2d 998, 98 NY2d 609, 537 US 1047.) IV. This Court's disposition of the appeal should leave intact the Appellate Division's summary judgment dismissing all of the plaintiff's claims against CNY Centro, Inc. and the union. (*Martin v Curran*, 303 NY 276; *Engquist v Oregon Dept. of Agriculture*, 553 US 591; *Smith v Reeves*, 96 AD3d 1550; *Millerton Agway Coop. v Briarcliff Farms*, 17 NY2d 57; *Bennett v Twin Parks Northeast Houses*, 93 NY2d 860; *Gaidon v Guardian Life Ins. Co. of Am.*, 94 NY2d 330; *Rudman v Cowles Communications*, 30 NY2d 1.)

*Richard E. Casagrande*, Latham, and *Elizabeth R. Schuster*, for New York State United Teachers, amicus curiae. I. The rule plaintiff seeks to overturn is long-standing and has application to a broad range of organizations. (*Martin v Curran*, 303 NY 276; *Barrett v New York Republican State Comm.*, 213 AD2d 989; *Heifetz v Rockaway Point Volunteer Fire Dept.*, 282 App Div 1062; *Shapiro v Sobel*, 85 AD2d 552; *Fairfield Lease Corp. v Empire Empls. Sunshine Club*, 74 Misc 2d 328; *Hunt v Sharp*, 202 AD2d 151; *Flagg v Nichols*, 307 NY 96.) II. The rule in *Martin v Curran* (303 NY 276 [1951]) should continue to apply to duty of fair representation claims. (*Thomas v Collins*, 323 US 516; *State Emp. Bargaining Agent Coalition v Rowland*, 718 F3d 126; *Duane Reade, Inc. v Local 338 Retail, Wholesale, Dept. Store Union, UFCW, AFL-CIO*, 17 AD3d 277; *Matter of Civil Serv. Bar Assn., Local 237, Intl. Bhd. of Teamsters v City of New York*, 64 NY2d 188; *Ahrens v New York State Pub. Empls. Fedn., AFL-CIO*, 203 AD2d 796; *Vaca v Sipes*, 386 US 171; *White v White Rose Food, a Div. of DiGiorgio Corp.*, 237 F3d 174; *Matter of Civil Serv. Empls. Assn. v Public Empl. Relations Bd.*, 132 AD2d 430, 73 NY2d 796; *Mamorella v Derkasch*, 276 AD2d 152; *Smith v Sipe*, 67 NY2d 928.) III. Changing the rule in *Martin v Curran* (303 NY 276 [1951]) is properly for the legislature, not the courts. (*Salemeh v Toussaint*, 25 AD3d 411; *People v Boothe*, 16 NY3d 195; *Day-Brite Lighting, Inc. v Missouri*, 342 US 421; *Campaign for Fiscal Equity, Inc. v State of New York*, 8 NY3d

14; *Klostermann v Cuomo*, 61 NY2d 525; *Matter of Town of Mentz v County of Cayuga*, 248 AD2d 1020; *New York State Bankers Assn. v Wetzler*, 81 NY2d 98; *People ex rel. Burby v Howland*, 155 NY 270.)

<strong>OPINION OF THE COURT</strong>

ABDUS-SALAAM, J.

In this action by a union member seeking damages from his union for breach of the duty of fair representation, the Appellate Division dismissed the complaint in accordance with our decision in *Martin v Curran* (303 NY 276 [1951]) because the complaint failed to allege that the union's conduct was ratified by "every single member" of the association. On this appeal, plaintiff argues that *Martin* is inapplicable and, alternatively, that this precedent should be overruled. We conclude that the *Martin* rule applies to this action and we decline to overrule our precedent, which involves both application of the common law and statutory interpretation.

I.

Eugene Palladino was employed by defendant CNY Centro, Inc. (Centro) as a bus driver for nearly 25 years prior to his termination in September 2008. He was a member of the collective bargaining unit that is represented by defendant Amalgamated Transit Union, Local 580 (the Union). Centro terminated Palladino's employment based upon incidents that occurred in October 2007 and August 2008. According to Centro, on October 5, 2007, Palladino telephoned the dispatch office approximately three hours before his scheduled run and advised the dispatcher that he was not going to make his run because he had been called out of town the previous night and would not make it back in time. Centro suspected that Palladino had not been called out of town at the last minute, but was in fact driving a tour bus for Quality Coach, another bus company. After an investigation, Centro concluded that Palladino's absence was planned in advance and that he had made false representations with respect to the circumstances surrounding his absence. Centro suspended Palladino without pay for five days and placed him on lifetime probation.

The Union filed a first step grievance on Palladino's behalf protesting the discipline, which was denied. A second step grievance was also denied on the ground that Palladino had refused to provide any additional information or specifics as to his

whereabouts on October 5th. The Union then requested arbitration. According to defendant Charles Watson, who was the Union business agent at the time, he wanted to speak to the owner of Quality Coach regarding when Palladino's employment for the trip had been arranged as well as Palladino's location when he called Centro on October 5th, but Palladino did not want Watson to speak to Quality Coach. Thereafter, based on Palladino's refusal to cooperate with the Union, Watson put the question of whether to proceed to arbitration to the Local 580 Executive Board, which unanimously agreed to withdraw the grievance and not proceed to arbitration.

On August 19, 2008, Centro charged Palladino with, among other things, misrepresentation for documenting on his manifest that he had left the company property on a run at 11:50 a.m. when in fact he had left on his run at 12:00 noon, and for advising dispatch that he was delayed on a certain road for 15 minutes due to construction, when he had only been on that road for approximately four minutes. Centro scheduled a termination hearing. Thereafter, the Union negotiated a settlement agreement with Centro, which included provisions that Palladino would be suspended without pay for 12 days, and be placed on general probation for 130 working days and indefinite probation for misrepresentation offenses. Palladino did not respond to Watson's phone call urging him to accept the settlement, and did not attend the termination hearing. As a result of the hearing, Centro terminated Palladino's employment. According to Palladino, he was terminated 45 days before reaching 25 years of service, which made him ineligible for early retirement at the age of 55, and ineligible for the receipt of lifetime health insurance benefits.

The Union filed a first step grievance protesting the termination, which was denied, as was a second step grievance. The Union's Executive Board then voted unanimously against submitting the grievance to arbitration.

Palladino commenced two separate actions against Centro and the Union; one action challenged his October 2007 discipline and the other challenged his August 2008 discharge. In the first action, he asserted claims of breach of contract against both Centro and the Union, and breach of the duty of fair representation against the Union. In the second action, he asserted claims of breach of contract and deprivation of his constitutional rights pursuant to 42 USC § 1983 against all defendants, wrongful termination against Centro, and breach of the duty of fair

representation against the Union. The actions were consolidated. Upon defendants' motions for summary judgment, Supreme Court, as relevant to this appeal, denied the Union's motion as to the claim for breach of the duty of fair representation, but otherwise dismissed the claims against the Union. The Appellate Division reversed, agreeing with defendants that, pursuant to *Martin*, "plaintiff's contention that the Union breached its duty of fair representation is 'fatally defective' " (*Palladino v CNY Centro, Inc.*, 101 AD3d 1653, 1654 [4th Dept 2012] [citation omitted]).

## II.

In a 4-3 decision authored by Judge Desmond, this Court held in *Martin* that a voluntary unincorporated association "is neither a partnership nor a corporation. It is not an artificial person, and has no existence independent of its members" (303 NY at 280). The Court determined that "for better or worse, wisely or otherwise, the Legislature has limited . . . suits against association officers, whether for breaches of agreements or for tortious wrongs, to cases where the individual liability of every single member can be alleged and proven" (*id.* at 282). Although there were policy considerations that might suggest a different result, the *Martin* Court was "under the command of a plainly stated, plainly applicable statute, uniformly held by this court, for many years, to require pleading and proof of authorization or ratification by all the members of the group" (*id.* at 280). That statute, General Associations Law § 13, is entitled "Action or proceeding against unincorporated association" and provides:

> "An action or special proceeding may be maintained, against the president or treasurer of such an association, to recover any property, or upon any cause of action, for or upon which the plaintiff may maintain such an action or special proceeding, against all the associates, by reason of their interest or ownership, or claim of ownership therein, either jointly or in common, or their liability therefor, either jointly or severally. Any partnership, or other company of persons, which has a president or treasurer, is deemed an association within the meaning of this section."

The *Martin* Court also noted that *McCabe v Goodfellow* (133 NY 89 [1892]), the leading case on the right to maintain an ac-

tion against an unincorporated association, held that a plaintiff could not maintain an action against the officer of an unincorporated association "unless the debt, which he seeks to recover, is one upon which he could maintain an action against all the associates by reason of their liability therefor" (303 NY at 281, quoting *McCabe*, 133 NY at 92), and that there had been a "line of consistent decisions to that effect" since *McCabe*.

Ultimately, the *Martin* Court concluded that, because a labor union is a voluntary unincorporated association, the plaintiff was required to plead and prove that each member of the union authorized or ratified the alleged wrongful conduct. *Martin* did not involve a union member suing his union (as is the case here), but was a libel action where the president of one union sued another union for libeling him in its newspaper.

Judge Conway dissented in an opinion joined by Judges Lewis and Froessel. The dissent concluded that the plaintiff had stated a cause of action for libel under the common law, and rejected the notion that the complaint must fail because it did not allege that all members of the union authorized or ratified the libelous statements. The dissent stressed that trades unions had been "[r]ecognized as juristic entities under both Federal and State statutes for many purposes" and "are no longer mere unincorporated associations, as that term was formerly understood. As a practical matter, it has been held that labor unions have as perpetual an existence as corporations" (303 NY at 293 [Conway, J., dissenting], citing *United States v White*, 322 US 694 [1944]; *Mine Workers v Coronado Coal Co.*, 259 US 344 [1922]).

Despite the legitimate points raised by the dissent, the *Martin* majority concluded that "this court does not revise statutes, in an effort to eliminate seeming injustices, or to bring the law into accord with modern fact" (303 NY at 282). The Court explained:

> "Whatever reasons be pressed on us for such changes, the power to change is not ours. It is for the Legislature to decide whether or not to overhaul these settled rules, after hearing both sides, and after considering the interests of the general public as well as those of the innumerable members of these associations" (*id.*).

Seven years after *Martin*, we carved out a narrow exception to the *Martin* rule in *Madden v Atkins* (4 NY2d 283 [1958]),

which held that *Martin* is inapplicable to a suit by a union member against a union arising from wrongful expulsion. Plaintiff's argument that we should apply *Madden* here is unpersuasive. We distinguished *Madden* from *Martin* because in *Madden*, the wrongful expulsion was effected through a vote by the membership (*see* 4 NY2d at 295-296). Here, there is no evidence that the Union membership voted on whether to submit plaintiff's grievances to arbitration or took any similar action.

That there was no vote by the Union's membership highlights one of the reasons why the *Martin* rule stands as an obstacle to suit against a union: union members do not vote on whether to pursue a grievance for one of their members. Rather, that decision is made by the union's executive board. Even if the members did vote to take a particular action on a grievance, it would be virtually impossible for a plaintiff to plead and prove that the voting was unanimous.

The *Martin* rule has been criticized as essentially granting unions complete immunity from suit in state court (*see e.g. Jund v Town of Hempstead*, 941 F2d 1271, 1281 [2d Cir 1991] [noting that requiring proof of unanimous membership authorization or ratification for a claim based on 42 USC § 1983 in the case of large organizations "would prove an insurmountable obstacle to virtually any plaintiff"]; *Building Indus. Fund v Local Union No. 3, Intl. Bhd. of Elec. Workers, AFL-CIO*, 992 F Supp 192, 195 [ED NY 1996] [the *Martin* requirement "is a nearly impossible burden to meet"], *affd* 141 F3d 1151 [2d Cir 1998]; *Modeste v Local 1199, Drug, Hosp. & Health Care Empls. Union, RWDSU, AFL-CIO*, 850 F Supp 1156, 1168 [SD NY 1994] ["(u)nquestionably, New York's *Martin* rule imposes an onerous and almost insurmountable burden on individuals seeking to impose liability on labor unions"]). The rule has also been described as being "of dubious validity when decided and . . . even less deserving of recognition today" (*Salemeh v Toussaint*, 25 AD3d 411, 413 [1st Dept 2006, Saxe, J., dissenting]).

As the dissent in *Martin* pointed out, federal courts have abandoned the notion that labor unions have no liability independent of the liability of each of its members, and allow unions to sue and be sued for federal claims (*see Coronado Coal*, 259 US at 386-391; *see also Modeste*, 850 F Supp at 1163-1164). New York, meanwhile, is said to be "in the company of a small minority of states" that cling to the common-law requirement that the complaint allege that all of the individual members of the union authorized or ratified the conduct at issue (Mitchell

H. Rubenstein, *Union Immunity from Suit in New York*, 2 NYU JL & Bus 641, 649 [summer 2006]). States that have retreated from this requirement include New Jersey (*see Donnelly v United Fruit Co.*, 40 NJ 61, 71, 190 A2d 825, 830 [1963] ["The mists of the conceptual world of the early common law should not be allowed to obscure the public interest in imposing liability on a union as a juristic entity for torts and contract breaches committed against one or more of its own members"], *overruled on other grounds by Saginario v Attorney Gen.*, 87 NJ 480, 435 A2d 1134 [1981]; *see also Buteas v Raritan Lodge No. 61 F. & A.M.*, 248 NJ Super 351, 591 A2d 623 [App Div 1991] [applying *Donnelly*'s reasoning to all voluntary associations and permitting a member of an unincorporated fraternal association to sue the association in tort]); Massachusetts (*see Diluzio v United Elec., Radio & Mach. Workers of Am., Local 274*, 386 Mass 314, 319, 435 NE2d 1027, 1031 [1982] [holding that the common-law rule "requiring a suit against all members of that union, should no longer be followed" and sustaining a complaint against a union by an employee injured by picketing union members]); and California (*see J.R. Norton Co. v General Teamsters, Warehousemen & Helpers Union, Local 890*, 208 Cal App 3d 430, 443, 256 Cal Rptr 246, 254 [6th Dist 1989] [holding that "(a)n unincorporated association acts through its officers, agents, or employees" and upholding a verdict in a suit by an employer against a local union for negligent supervision of strikers], *cert denied* 493 US 894 [1989]).

Additionally, "[i]n many jurisdictions, by statute or decisional law many kinds of associations are now treated as jural entities, distinct from their members in the same way that a corporation is distinct from its stockholders" (Restatement [Second] of Judgments § 61, Comment *b*). Specifically, 15 states and the District of Columbia have adopted either the first version of the Uniform Unincorporated Nonprofit Association Act (UUNAA) promulgated by the Uniform Law Commission (*see* Uniform Unincorporated Nonprofit Association Act [1996], available at http://www.uniformlaws.org/shared/docs/unincorporated%20nonprofit%20association/uunaa96.pdf [last visited Mar. 3, 2014]) or the revised version of that act (RUUNAA) (*see* Revised Uniform Unincorporated Nonprofit Association Act [2008], available at http://www.uniformlaws.org/shared/docs/unincorporated%20nonprofit%20association/ruunaa_final_08.pdf

[last visited Mar. 3, 2014]).* RUUNAA makes clear that an unincorporated nonprofit association is a legal entity separate from its members and managers that, among other things, can sue and be sued in its own name (*see id.*). In its commentary explaining why states should adopt RUUNAA, the Uniform Law Commission notes:

> "This is an area of the law that has long needed reform and updating. The existing state laws are largely based on common law aggregate theory, which no longer is suitable for organizations. Unincorporated nonprofit associations are the only type of organization where states have not enacted modern comprehensive governing statutes. . . .

> "RUUNAA provides the same personal liability protection to members and managers of an unincorporated nonprofit association formed or operating in an enacting state as does a corporation. While this is a change from the common law joint and several liability theory which is based on the aggregate theory of such associations, it comports with the reasonable expectations of creditors and other persons engaged in transactions with them." (Uniform Law Commission, Why States Should Adopt RUUNAA, available at http://www.uniformlaws.org/Narrative.aspx?title=Why+States+Should+Adopt+RUUNAA [last visited Mar. 3, 2014].)

## III.

Although we question the continued utility or wisdom of the *Martin* rule, mindful of "the eminently desirable and essential doctrine of *stare decisis*" (*People v Hobson* (39 NY2d 479, 487 [1976, Breitel, Ch. J.]), we decline plaintiff's invitation to overrule our precedent. *Martin* involved not only the Court's reading of the common law as it stood at the time, but statutory

---

* Alabama, Arkansas, Colorado, Delaware, the District of Columbia, Hawaii, Idaho, Illinois, Louisiana, North Carolina, Texas, Wisconsin and Wyoming adopted UUNAA (*see* http://www.uniformlaws.org/Act.aspx?title=Unincorporated%20Nonprofit%20Association%20Act%20%281992%29%281996%29 [last visited Mar. 3, 2014]), and Arkansas, the District of Columbia, Iowa, Nevada and Pennsylvania adopted RUUNAA (*see* http://www.uniformlaws.org/Act.aspx?title=Unincorporated%20Nonprofit%20Association%20Act%20%282008%29 [last visited Mar. 3, 2014]).

interpretation of General Associations Law § 13. We disagree with the dissent's view that "removing the *Martin* rule would not require overruling precedent involving statutory interpretation" (dissenting op at 153). The *Martin* majority was guided by "the command of a plainly stated, plainly applicable statute" (303 NY at 280), and both the majority and the dissent recognized that, in New York, liability of unincorporated associations was a matter primarily governed by the legislature's intent and policy decisions (*see Martin* at 280-282; *see also id.* at 289-290 [Conway, J., dissenting]). We did in fact interpret the statute when we concluded that "the Legislature has limited . . . suits against association officers, whether for breaches of agreements or for tortious wrongs, to cases where the individual liability of every single member can be alleged and proven" (303 NY at 282), and overruling *Martin* would require this Court to abandon its prior interpretation of the statute. Since our decision in *Martin*, the legislature amended General Associations Law § 13 in 1961, when it added the second paragraph of section 13 to broaden the list of officials who could be served with process on behalf of a labor organization (*see* L 1961, ch 518, § 1). The legislature did not take that opportunity to clarify or correct our interpretation of the statute, nor has it acted since in response to *Martin*. As we noted in *Hobson*:

> "Precedents involving statutory interpretation are entitled to great stability. After all, in such cases courts are interpreting legislative intention and a sequential contradiction is a grossly arrogated legislative power. Moreover, if the precedent or precedents have 'misinterpreted' the legislative intention, the Legislature's competency to correct the 'misinterpretation' is readily at hand" (39 NY2d at 489 [citations omitted]; *see also People v Rudolph*, 21 NY3d 497, 512 [2013, Read, J., dissenting]).

While this Court has been willing to overrule precedent involving statutory interpretation when "we find the reasons for adopting what we think the correct interpretation of the statute to be more compelling than the reasons for adhering to a mistaken one" (*Rudolph*, 21 NY3d at 502 [Smith, J.]), we do not believe this is the best course to take here. Just considering the scope of a decision overruling *Martin* raises more questions than answers. For example, do we remove the *Martin* requirement for lawsuits against *all* unincorporated associations or

just labor unions? And would a new rule apply both to association members and to nonmembers who have a cause of action against that association? The Restatement (Second) of Judgments notes that "the trend of the decisions is to accord entity treatment to associations having a formally organized internal government and engaging in substantial and continual activities, but not to ones having a more or less tenuous existence and episodic activity" (Restatement [Second] of Judgments § 61, Comment *b*). Should New York follow this "entity treatment" approach or some other? These and other weighty considerations lead us to conclude that adoption of a rule that does away with *Martin* is best left to the legislature, which "has far greater capabilities to gather relevant data and to elicit expressions of pertinent opinion on the issues at hand" (*Matter of Higby v Mahoney*, 48 NY2d 15, 18-19 [1979]). Indeed, the legislature is better able to assess all of the policy concerns in this area and to limit the applicability of any new rule removing or amending the requirements for maintaining an action against unincorporated associations.

Meanwhile, plaintiff and other union members like him are not without a remedy. Public employees in New York may bring an improper practice charge before the New York State Public Employment Relations Board pursuant to the Taylor Law (Civil Service Law § 200 *et seq.*). Civil Service Law § 209-a (2) (c) provides that it shall be an improper practice for an employee organization "to breach its duty of fair representation to public employees."

Accordingly, the order of the Appellate Division should be affirmed, with costs.

PIGOTT, J. (dissenting). Over 60 years ago, this Court, in a 4-3 decision, opined that "for better or worse" the legislature has limited lawsuits against unincorporated associations, like the union here, to wrongful conduct that was "ratified" by "every single member" of the association (*Martin v Curran*, 303 NY 276, 282 [1951]). Until today, this Court had never again applied this so-called "*Martin* rule." In fact, the Court distanced itself from the rule by allowing suits alleging breach of contract against an unincorporated union for wrongful expulsion of its members, without the need to prove the claim against all of the union's members (*see Madden v Atkins*, 4 NY2d 283, 295 [1958]). The Appellate Division has further distinguished the *Martin* rule by permitting negligence, as opposed to intentional,

claims to proceed against an unincorporated union (*see e.g. Piniewski v Panepinto*, 267 AD2d 1087 [4th Dept 1999]; *Torres v Lacey*, 3 AD2d 998 [1st Dept 1957]).

The reluctance shown by the majority today in following the *Martin* rule in this fair representation action is striking. Indeed, the majority devotes as much space to detailing criticisms of *Martin* as to defending it, noting for example the "legitimate points" raised in the *Martin* dissent (majority op at 147). I would go further and overrule *Martin*. Contrary to the majority's view (*see* majority op at 150-151), removing the *Martin* rule would not require overruling precedent involving statutory interpretation. Although the *Martin* court looked to General Associations Law § 13—which clearly authorizes actions to be maintained against the president or treasurer of the association—the Court did not interpret any of that statute's language. Undisputedly, the statute was enacted for the convenience of a plaintiff, such as the one in this case, by enabling him to sue and more promptly reach the property of the union for the satisfaction of any judgment he may recover without naming, as defendants, hundreds or even thousands of members of a union. Where the *Martin* court went wrong was finding that, despite the fact that plaintiff could now bring an action directly against the union, the union could then face no liability under the common law.

The union in this case did not need, nor did it seek, "ratification" by its members to file the grievances on behalf of plaintiff, which actions form the basis of the complaint. To require such approval would completely neuter the very purpose of the union's existence to act, through its officers and directors, for and on behalf of its members. As the majority notes (majority op at 148), it was the union, through its executive board, that took the actions that, in the view of the plaintiff, denied him fair representation. I surmise that it is the same executive board that hired the attorneys now representing the union who insist that the board's actions must be "ratified" by the entire membership.

Finally, the "weighty" questions posed by the majority (*see* majority op at 152) present no insuperable problem. Yes, the *Martin* rule should be removed for all unincorporated associations and yes, it would apply to claims of members and nonmembers. We need not decide other questions not presented in this appeal. The majority has allowed its trepidation to overcome common sense and fairness.

Chief Judge LIPPMAN and Judges GRAFFEO, READ and RIVERA concur with Judge ABDUS-SALAAM; Judge PIGOTT dissents in an opinion in which Judge SMITH concurs.

Order affirmed, with costs.