



FILED

Jan 09 2025, 10:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# I N   T H E

# Indiana Supreme Court

Supreme Court Case No. 24S-AD-117

## In Re: The Adoption of P.J.W.

### J.D. and M.D.,
*Appellants (Petitioners below),*

–v–

### R.W.,
*Appellee (Respondent below).*

---

Argued: June 27, 2024 | Decided: January 9, 2025

Appeal from the Montgomery Superior Court,
No. 54D02-2204-AD-8
The Honorable Daniel G. Petrie, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 23A-AD-1254

---

**Opinion by Justice Goff**

Chief Justice Rush and Justices Massa, Slaughter, and Molter concur.

**Goff, Justice.**

J.D. (Grandfather) and M.D. (Grandmother) (collectively, Grandparents) are the great grandparents of eight-year-old P.J.W. (Child). For most of his life, Child has lived with Grandparents while both his parents struggled with incarceration, substance abuse, and violence. After successfully obtaining guardianship over Child, Grandparents petitioned to adopt him. Child's biological father R.W. (Father) contested the adoption. Even though Grandparents are healthy and have provided for Child emotionally and financially, the trial court concluded that adoption was not in Child's best interest because of Grandparents' advanced ages and Father's purported rehabilitation.

This case presents an issue that we have not previously considered. That is, how should trial courts address a petitioner's advanced age when determining whether to grant an adoption petition. We hold that a petitioner's advanced age should be considered as to whether "the petitioner or petitioners for adoption are of sufficient ability to rear the child and furnish suitable support and education" under Indiana Code subsection 31-19-11-1(a)(2). We also hold that the trial court based its best-interest determination on an erroneous legal conclusion that it is "inherently" in Child's best interest to be raised by a biological parent. *See* App. Vol. 2, p. 10. We thus reverse and remand with instructions to consider Grandparents' advanced ages in light of ability under subsection 31-19-11-1(a)(2) and to conduct a new best-interest determination using the proper legal standard.

# Facts and Procedural History

Child was born in September 2016. Grandparents, residents of Illinois, are the grandparents of Child's mother. After living with Grandparents part-time for the first two years of his life, Child went to live with them full-time in 2019. In September 2020, as both parents were incarcerated and facing criminal charges, Grandparents established permanent guardianship over Child without objection from either parent. Child's mother then died. Incarcerated for much of Child's life, Father has an extensive—and at times violent—criminal history, with convictions for

(among other things) possession of methamphetamine (2021), battery and strangulation (2019), intimidation (2014), battery and criminal mischief (2012), and burglary and theft (2003). In April 2022, Grandparents petitioned to adopt Child. Father timely moved to contest the adoption.

At an initial adoption hearing, the trial court heard testimony from both parties and concluded that, given his lack of financial support despite an ability to pay, Father's consent to the adoption was not necessary.[1] Shortly after the initial hearing, the State filed a new criminal charge against Father for driving while suspended.[2] At the final adoption hearing in April 2023, Grandparents—aged seventy-one and seventy-four at the time—testified to having been married for over forty years, to their overall good health, to having raised Child full-time since 2019, to their stable income, to their assets including a home that is almost paid off, to the medical care and schooling Child receives, and to the fact that they do "everything together"—from working on cars and doing chores to working in the yard and camping at the lake. Tr. Vol. 2, pp. 73–87. While having received letters from Father to Child over the years, Grandparents testified to reading those letters to Child and keeping them in a box to show Child when he is older. Child also has not seen Father in-person since living with Grandparents permanently. For his part, Father testified to his employment, his progress in drug court, his stable housing, his concern with Grandparents' advanced ages, his desire for Child to have a relationship with Child's half-siblings, and his Mexican heritage and his desire to share that heritage with Child.

Based on this testimony, the trial court made the following **factual findings**:

- Grandparents "will be 82 and 86 years of age" when Child is 18.

---

[1] *See* Ind. Code § 31-19-9-8(a)(2)(B) (no consent to adoption required by a "parent of a child in the custody of another person" if for at least one year that parent "knowingly fails to provide for the care and support of the child when able to do so").

[2] According to Father's counsel, the charge was subsequently dismissed. Oral argument at 29:30–29:40.

- Child has lived with Grandparents "almost exclusively" since January 2019.
- Father is sober, "gainfully employed," and has made "significant progress towards rehabilitation."
- Father has made only "inconsistent attempts to communicate" with Child.
- Grandparents had "actively worked to prevent Father" from contacting Child.
- Child remembers Father and a "bond remains between Father and the Child."
- At no point have Grandparents requested support for Child from Father.

App. Vol. 2, pp. 8–10.

In its **legal conclusions**, the court determined the following:

- It is "inherently in a child's best interest to be raised by a biological parent."
- "The protection of rights of natural parents is carried to a further degree in adoption proceedings than in custody cases." (citing *In re Adoption of Bryant*, 189 N.E.2d 593 (Ind. Ct. App. 1963)).
- The two "primary drivers" in balancing all relevant factors are
  - Father's "significant steps" toward "reformation" from his criminal past, including drug-court participation and community involvement; and
  - Grandparents' advanced ages, presenting a less than "ideal situation" despite them otherwise being "healthy and active."

App. Vol. 2, pp. 10–11. Based on these findings of fact and conclusions of law, the trial court found that Grandparents failed to show that adoption was in Child's best interest. *Id.* at 11.

Grandparents appealed, arguing that the trial court erred in denying their adoption petition based on their ages and speculation regarding Father's reformation. In a 2-1 opinion, the Court of Appeals affirmed. *In re Adoption of P.J.W.*, 223 N.E.3d 291, 292 (Ind. Ct. App. 2023). While deeming

the case an "extremely close" one, the majority ultimately deferred to the trial court under the applicable standard of review. *Id.* at 295–96. In his dissent, Judge Crone concluded that Grandparents had rebutted the presumption that the trial court's decision was correct. *Id.* at 298. Judge Crone pointed out that appellate courts owe no deference to a trial court's legal conclusions, and he considered improper the trial court's legal conclusion that "it is *inherently* in a child's best interest to be raised by a biological parent." *Id.* at 296 (quoting the record) (emphasis supplied by Judge Crone). Considering Father's extensive, varied, and serious criminal history, Judge Crone described Father's reformation as "speculative at best." *Id.* at 297. In contrast, he explained, Grandparents have a strong relationship with Child, and they are financially stable and in overall "good health." *Id.* The trial court's reliance on Grandparents' advanced ages as a factor in the analysis, he opined, amounted to "inappropriate bias with no basis in precedent or statute." *Id.*

The Grandparents petitioned for transfer to this Court, which we granted, vacating the Court of Appeals' opinion under Indiana Appellate Rule 58(A).

# Standards of Review

A trial court's decision in matters of family law enjoys "considerable deference" on review, given its "position to judge the facts, determine witness credibility, get a feel for the family dynamics, and get a sense of the parents and their relationship with their children." *E.B.F. v. D.F.*, 93 N.E.3d 759, 762 (Ind. 2018) (internal quotation marks and citation omitted). In adoption cases specifically, this Court neither reweighs evidence nor assesses witness credibility and "presume[s] that the trial court's decision is correct," with the appellant bearing the burden of rebutting that presumption. *Id.* (citation omitted).

When, like here, the trial court enters findings of fact and conclusions of law under Trial Rule 52(A), an appellate court on review "must first determine whether the evidence supports the findings and second, whether the findings support the judgment." *Matter of Adoption of C.J.*, 71

N.E.3d 436, 442 (Ind. Ct. App. 2017) (citation omitted). An appellate court "will not set aside the findings or the judgment unless they are **clearly erroneous**." *Id.* (citation omitted) (emphasis added). A "trial court's findings of fact are clearly erroneous if the record lacks any evidence or reasonable inferences to support them," while a "judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings." *Id.* (citation omitted). We also owe no deference to a trial court's legal conclusions. *In re Adoption of A.M.*, 930 N.E.2d 613, 616 (Ind. Ct. App. 2010).

# Discussion and Decision

The adoption statute provides that a trial court must grant an adoption petition if after hearing the evidence the trial court finds, in pertinent part, that:

> (1) the adoption requested is in the best interest of the child;
>
> (2) the petitioner or petitioners for adoption are of sufficient ability to rear the child and furnish suitable support and education; [and] …
>
> (7) proper consent, if consent is necessary, to the adoption has been given.

Ind. Code § 31-19-11-1(a). Here, the trial court found that Father's consent to the adoption was not required because Child had been living with Grandparents, and Father had not supported Child for over a year. *See* I.C. § 31-19-9-8(a)(2)(B). At issue, then, is whether Grandparents are

sufficiently capable of rearing and supporting Child, and if the adoption is in Child's best interest.[3]

## I. The trial court erred by not considering Grandparents' ages in light of ability under Indiana Code subsection 31-19-11-1(a)(2).

A petitioner's advanced age is an appropriate consideration when determining whether to grant a petition to adopt a minor child. However, the statutory authority for such consideration arises from Indiana Code subsection 31-19-11-1(a)(2), which requires the court to **specifically** determine whether the petitioner has the ability to rear and support the child, rather than Indiana Code subsection 31-19-11-1(a)(1), which requires the court to determine **generally** whether adoption is in the child's best interest. As people age, they may become more infirm or less financially stable. But these issues go more directly to their ability to raise the child than to the child's best interest generally.

To be sure, other courts have found that advanced age factors into the more general best-interest determination. But those courts still consistently link age to ability. Decisions by trial courts that deny a petition for adoption because of the petitioner's advanced age cite issues like the likelihood that the child will suffer the loss of the adoptive parent before becoming an adult, difficulty for the adoptive parent to supply the material needs of the child, potential limited participation in activities with the child, or difficulty in mustering the physical effort required to control a young child. *See* David B. Harrison, *Age of Prospective Adoptive Parent as Factor in Adoption Proceedings*, 84 A.L.R.3d 665, 668 (1978 and

---

[3] Grandparents also contend that the trial court's findings and conclusions reveal an "age bias" that is contrary to the protections afforded to them under the Equal Protection Clause of the United States Constitution and article 1, section 23 of the Indiana Constitution. Pet. to Trans. at 7. But "we generally avoid addressing constitutional questions if a case can be resolved on other grounds," so we decline to address Grandparents' constitutional arguments here. *See Girl Scouts of S. Ill. v. Vincennes Ind. Girls, Inc.*, 988 N.E.2d 250, 254 (Ind. 2013) (citations omitted).

Supp. 2024) (citing cases). *See also Matter of Jennifer A.*, 225 A.D.2d 204, 207–08 (N.Y. App. Div. 1996) (holding that, by focusing solely on the foster mother's "chronological age" while "ignor[ing] the fact that [she] was in very good health and very active, with resources to fall back upon," the trial court "acted against the best interests of the child" by denying her adoption petition and ordering placement with a distant relative with whom child had limited contact); *Adoption of M.H.*, 15 N.E.3d 612, 625 (Ind. Ct. App. 2014) (noting the trial court's "specific findings" related to the parties' "relative ages" and accompanying "health concerns" impacting their ability to raise the child), *trans. denied*. Therefore, a court should consider a petitioner's advanced age through the lens of Indiana Code subsection 31-19-11-1(a)(2) to determine whether their age impedes their ability to rear and support the child.

Here, the trial court considered Grandparents' ages a less than "ideal situation." App. Vol. 2, p. 11. But beyond noting that Grandparents "will be 82 and 86 years" old when Child becomes legally independent, the trial court entered **no specific findings** related to Grandparents' ages to explain why they are incapable of rearing and supporting Child. *See id.* at 8, 11. Here, Grandparents own a home with the mortgage almost paid off. Grandparents provide Child with schooling and medical care. Grandparents take Child on play dates and have enrolled him in activities like karate, tumbling, swimming, and tee ball. Grandfather testified to "walk[ing] three miles a day," to playing basketball and soccer with Child, and to "roller skating on Saturday nights" with him. Tr. Vol. 2, p. 75. While Grandfather takes medication for Type-2 diabetes, his overall "health is good" and he has no "disease or illness" that is "debilitating" or that would otherwise "cause [him] to be unable to take care of [Child]." *Id.* at 75, 91. For her part, Grandmother testified to taking blood-pressure and cholesterol medication but that she had not had any extended hospital stays in the last several years. *Id.* at 97. And Grandfather attested to her being in "perfectly good health." *Id.* at 76; *see In re Adoption of Dove*, 368 N.E.2d 6, 10 (Ind. Ct. App. 1977) (finding petitioner-grandparents sufficiently capable of raising child after providing him with education, housing, and care for the past eight years).

While we acknowledge that the best-interest-of-the-child standard is a flexible one, the General Assembly has specified that the ability of the petitioners is separate from the best-interest prong of the adoption statute. And if the General Assembly wanted courts to consider age without considering ability, it could have set a maximum age for adoptive parents. But the General Assembly has not done so, instead recognizing that abilities vary with age and family dynamics. Therefore, we reverse and remand with instructions to consider Grandparents' advanced ages in light of ability under subsection 31-19-11-1(a)(2).

## II. The trial court based its judgment on an improper legal conclusion that it is "inherently" in Child's best interest to be raised by a biological parent.

In its best-interest determination, the trial court made a legal conclusion that it is "**inherently** in a child's best interest to be raised by a biological parent." App. Vol. 2, p. 10 (emphasis added). We review a trial court's legal conclusions de novo. *In re Adoption of A.M.*, 930 N.E.2d at 614 n.1. A parent's interest in the care, custody, and control of their children is "perhaps the oldest of the fundamental liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). The adoption statute reflects and aims to preserve the important and unique relationship between parent and child by requiring parental consent to adopt in most cases. *See* I.C. § 31-19-11-1(a)(7).

But this does not necessarily mean it is always in a child's best interest to be raised by a biological parent. The General Assembly has therefore limited parental rights in certain cases such as this one. Here, the trial court concluded in March 2023 that Father's consent for the adoption was not required because (1) Grandparents have had custody of Child since 2019 while Father struggled with his criminal past and underwent rehabilitation, and (2) Father at times "had the ability and means to provide some support to the Child since his release from custody in 2021" but knowingly failed to do so. App. Vol. 2, pp. 30, 32–34; *see* I.C. § 31-19-9-8(a)(2)(B) (no consent required where child has been in the custody of

another if for at least one year, parent knowingly fails to provide support for child when able to do so). To conclude that it is "inherently" in a child's best interest to be raised by a biological parent presumes that "the mere existence of a biological parent would preclude adoption in every instance," which is not the case. *In re Adoption of P.J.W.*, 223 N.E.3d at 296 (Crone, J., dissenting). A "blood relationship, while a material factor, is not controlling." *In re Adoption of J.L.J.*, 4 N.E.3d 1189, 1200 (Ind. Ct. App. 2014) (cleaned up), *trans. denied*. Instead, the "main concern should lie with the effect of the adoption on the reality of the minor child's life." *In re Adoption of N.W.*, 933 N.E.2d 909, 915 (Ind. Ct. App. 2010), *opinion adopted*, 941 N.E.2d 1042 (Ind. 2011).

The reality is that Child has lived with Grandparents nearly his entire life and has formed stable relationships with them and within his community while having very little contact with Father. As the trial court observed, Child has resided almost "exclusively" with Grandparents since he was two years old. Tr. Vol. 2, p. 90. Grandparents have provided Child with financial stability, medical care, schooling, shelter, safety, and security. Grandparents testified to the activities they do together, their trips to the lake, having a pet dog together, and that leaving them would "upset [Child] immensely" and "would scare him." *Id.* at 73–90. Child has also formed strong ties to his community in Illinois. He has numerous friends; goes on play dates; has no problems in school; and does activities like karate, tumbling, swimming, and tee ball.

The "purpose of Indiana's adoption statutes," Indiana courts have stressed, "is to protect and promote the welfare of children by providing them with **stable family units**." *In re Adoption of N.W.*, 933 N.E.2d at 914 (emphasis added) (citation omitted). Although denying Grandparents' adoption petition would leave their guardianship in place, guardianships are easier to terminate than adoptions. *See* I.C. § 29-3-12-1(c)(4) (allowing termination of guardianship if the trial court deems it unnecessary for "any" reason); *In re Guardianship of J.K.*, 862 N.E.2d 686, 692–693 (Ind. Ct. App. 2007) (stressing that the burden of proof lies with the custodial party, not the parent, when the parent initiates action to reobtain custody of child). Should Child be separated from Grandparents and his Illinois community, especially because Father cannot leave Indiana due to his

probation, Child may become distressed. Denying Grandparents' adoption petition could deny Child stability and permanence, the exact opposite of the best interest of the child.

Although Father has made significant progress towards rehabilitation and has constitutional rights to parent, those rights are "not absolute." *See In re G.Y.*, 904 N.E.2d 1257, 1259 (Ind. 2009). The record evidence, including the trial court's finding that Father's consent was not necessary and Grandparents' longtime guardianship over Child, suggests to us that the trial court's legal error may have weighed heavily in its determination that adoption was not in Child's best interest. Therefore, we reverse and remand with instructions to make a new best-interest determination using the proper legal standard.

## Conclusion

We hold that the trial court's denial of Grandparents' petition to adopt was clearly erroneous. We acknowledge, as the trial court properly did, that Father has made significant and impressive progress towards rehabilitation through his community involvement and successful participation in drug court. Still, Father's progress does not diminish the much-needed stability, security, and love Grandparents have provided Child his entire life. We reverse the trial court's denial of Grandparents' adoption petition and remand with instructions to consider Grandparents' ages in light of their ability to raise Child under Indiana Code subsection 31-19-11-1(a)(2) and conduct a new best-interest determination using the proper legal standard.[4]

Rush, C.J., and Massa, Slaughter, and Molter, JJ. concur.

---

[4] We thank Jon Laramore from Indiana Legal Services, Inc., for representing Father *pro bono* and for his excellent advocacy.

ATTORNEYS FOR APPELLANTS

Robert N. Reimondo

Capper Tulley & Reimondo

Crawfordsville, Indiana

Denise F. Hayden

Lacy Law Office, LLC

Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Jon Laramore

Megan Stuart

Indiana Legal Services, Inc.

Indianapolis, Indiana